Paul *et al.* *v.* Davis.

Filed Jan. 30, 1885.

No. 12,022.

## PAUL ET AL. *v.* DAVIS.

DESCENTS.—*Adoptive Child.*—*Adoptive Parents.*—Where a husband and wife jointly adopt a child, and the child so adopted dies, without children or their descendants, the owner of land inherited from the adoptive mother, the surviving husband and adoptive father will inherit such land in preference to the natural mother.

STARE DECISIS.—*Bona Fide Purchaser.*—Judicial decisions are evidences of the law, but where they are not long established, and are palpably erroneous and plainly productive of injustice, they should be overruled, and a party who buys lands during a pending litigation can not hold it as a *bona fide* purchaser solely on the ground that in former decisions the court had declared the law to be as claimed by his grantor.

From the Montgomery Circuit Court.

*G. W. Paul* and *J. E. Humphries*, for appellants.

*E. C. Snyder, P. S. Kennedy* and *S. C. Kennedy*, for appellee.

ELLIOTT, J.—The facts in this case are substantially the same as in the case of *Humphries* v. *Davis, ante,* p. 274. The only element of fact present here that was absent there is, that the appellants purchased part of the lands in controversy of Elizabeth Krug, the mother of Emily Davis, the adopted child of Isaac Davis and his wife Jessie Davis.

The principal question in this case is set at rest by the

cases of *Krug* v. *Davis,* 87 Ind. 590, *Davis* v. *Krug,* 95 Ind. 1, *Humphries* v. *Davis, supra,* and *Humphries* v. *Davis, ante,* p. 369. The status of parent and child, created by our statute providing for the adoption of children, determines the right of inheritance as to property which descends to the adoptive child from its adoptive parents, and casts it upon the adoptive father in preference to the natural mother.

We shall not again enter upon a full discussion of this subject, but there are some points developed in the argument of this case which deserve discussion.

The adoptive child does become the stirps or stock of inheritance, but to whom does it sustain this relation as to property acquired by inheritance from the adoptive parents? Doubtless, this relation exists between such a child and its children; they are of the original stock of descent, for they bear the relation of grandchildren to the adoptive parents. The legal relation does not end with the death of the adoptive child, and so the line of descent goes back, in default of wife or children, to the source from which the property came. This is strictly equitable and in harmony with principle. *Hyatt* v. *Pugsley,* 33 Barb. 373; *Valentine* v. *Wetherill,* 31 Barb. 655; Bingham Desc. 53; 4 Kent Com. 409. The natural mother is not of the stock from which the property came to the child which was given in adoption to others, and between her and that stock there is a gap which is not bridged by any statute or by any principle of justice. It is strictly consistent with justice, with principle and with our statutory scheme of descents, to prefer the adoptive father to the natural mother in cases where the adoptive father was the original stock of inheritance. The natural mother is as to that stock an utter stranger, and, as to property descending from that stock, has suffered another to fully occupy the status of parent with all of its legal incidents. Where the adoptive child dies under circumstances such as would, in a similar case, cast the inheritance upon the father of a natural child, the adoptive father inherits the property which the

adoptive child acquired by virtue of the status fixed by the act of adoption.

We are referred to the case of *Cloud* v. *Bruce,* 61 Ind. 171, where it was said : "The statute is full and complete. It provides 'for every conceivable case;' that is, by its provisions all the property of a decedent can be legally awarded to a legal recipient." There is nothing in that decision opposing what we hold here. We hold that the statute providing for the adoption of children, justly interpreted, and construed so as to give it a position in a uniform system of jurisprudence, does provide that the adoptive father shall take from the adoptive child to the exclusion of the natural mother. The difficulty with counsel is, that they look to the statute on the subject of adoption as though it stood alone, forming in itself a complete system and exhausting the whole subject. This view is much too narrow. When the statute fixed, as by providing that such adopted father or mother shall occupy the same position that he or she would if the natural father or mother it did fix, the status of the parties, both parent and child, it supplied the means of determining their legal rights. Legal rights are determined by the status of the persons concerned, and the status here is fixed. What the rights flowing from that status are can only be ascertained by looking to the rules and statutes constituting the great body of law of which the statute creating the status simply forms a part.

When the statute on the subject of adopting children was engrafted into our jurisprudence, it necessarily effected some changes, and made necessary, as does every change, some readjustment of parts. A new rule can not be incorporated into any system without making it necessary to so change the system as that the new rule shall fall into its proper place in one uniform system of jurisprudence. The readjustment made necessary by the statute under immediate mention is not a radical one, nor is it a jarring one; all that is necessary is that the adoptive parent shall be deemed entitled, by virtue of his legal status, to the place of a natural father in

so far as concerns the rights operated upon, and, in truth, created by the new statute. These are the rights of succession to the property vested in the adoptive child by force of the law, and not by virtue of heritable blood. Appellants quote from the case of *Ross* v. *Ross*, 129 Mass. 243, S. C. 37 Am. R. 321, this language: "But this section must be understood as merely laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to inherit. It does not undertake to prescribe who shall be considered a child, or a widow, or a husband, or what is necessary to constitute the legal relation of husband and wife, or of parent and child. Those requisites must be sought elsewhere." But counsel while quoting, so far as they go, the language of the court correctly, do not quote it all, and they thus give a palpably wrong meaning to the language used. The court applied its remarks to the general statute of descents, and not to the statute providing for the adoption of children. It was speaking of one statute, but counsel wrench the language from its connection and give it a radically different meaning from the one the court intended it to have, by applying it to an altogether different statute. There can be no question that counsel are profoundly in error, for nothing can be plainer or more unequivocal than the language of the court. "He who runs may read." We decide here, as was decided in that case, that the general statute of descents does not define the status of parent and child for all cases, and that the status of parent and child, so far as rights growing out of the statute on the subject of adoption are concerned, and so far as concerns property operated upon by it, is created by the statute just mentioned, and not by the general statute. The decision is, therefore, against, and very strongly against, the position upon which counsel plant their principal position. Taking together as parts of one great system of jurisprudence the general statute of descents, with its legal incidents, and the statute for the adoption of children, it is very plain that there is a statutory

provision fixing the status, and when we ascertain the status we have secured the key to the main position, for from the status of the persons interested flow the legal right, interest and title.

There is no force in the argument that the appellants are entitled to hold as *bona fide* purchasers because the court decided in the case of *Barnhizel* v. *Ferrell*, 47 Ind. 335, that an adoptive parent would be excluded and preference given to the natural kinsmen of the child. If, in any case, the purchaser has a right to buy upon the faith of a judicial decision, and use it as an invulnerable shield, the appellee would not have the right in such a case as this. The facts in this case and in the former case are essentially different, and the reasoning in one earlier and two later cases strongly impeached the soundness of the case relied upon by appellants. In the earlier case of *Barnes* v. *Allen*, 25 Ind. 222, it is clearly implied that the relation between the adoptive parent and the adoptive child is that of parent and child, with the reciprocal right of inheritance. In the later cases of *Isenhour* v. *Isenhour*, 52 Ind. 328, and *Krug* v. *Davis*, *supra*, the reasoning of the court is even more strongly against the position assumed in *Barnhizel* v. *Ferrell*, *supra*. The law was, therefore, in an unsettled condition, and the appellants bought when this was the condition of affairs, and while Davis was, as they knew, stoutly contesting the right of their grantor to deprive him of the property of which his wife and his adopted daughter had died the owner.

A judicial decision does not make unalterable law, nor is it law in the sense that statutes are law. It was justly said by Senator Platt, in *Yates* v. *Lansing*, 9 Johns. 415, that " The decisions of courts are not the law; they are only evidence of the law." In another case it was said: " I hope we shall consider what a decision really is, and treat it accordingly; not as the law, nor as giving the law, but simply as evidence of the law: and not conclusive evidence, but only *prima facie* evidence of what the law is." *Henry* v. *Bank of Salina*, 5 Hill, 535. Chancellor Kent says: " Even a series of de-

·cisions are not always conclusive evidence of what is law; and the revision of a decision very often resolves itself into a mere question of expediency, depending upon the consideration of the importance of certainty in the rule and the extent of property to be affected by a change of it." Again he says: " It is probable that the records of many of the courts in this ·country are replete with hasty and crude decisions; and such ·cases ought to be examined without ·fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error." 1 Kent Com. 477. The Lord ·Chancellor of England said to the House of Lords: " You ·are not bound by any rule of law which you could lay down, if, upon a subsequent occasion, you should find reason to differ from that rule, that is, like every court of justice, and I regard this as a court of justice; .it is inherent in the nature of every court of justice that it should have liberty to correct any error into which it may have fallen." *Bright* v. *Hutton,* 12 Eng. L. and Eq. R. 1, *vide* p. 15. In the case cited the earlier ·case of *Hutton* v. *Upfill,* 2 H. L. Cases, 674, was overruled, although it was a case growing out of the same subject-matter, :and involving the same principle and substantially the same interests. The law is a science of principles, and this can not be true if a departure from principle can be perpetuated by a persistence in error. If it be correct to affirm that there can be no departure from former decisions, then it would be true, .as it has been well said, that " In such cases '*summum jus*' might be '*summa injuria.*'" Ram Legal Judg. 201.

The Supreme Court of California, in discussing this general subject, said : " But it is a solecism to say that causes should be tried upon wrong principles—be decided against the law—whether it be for the purpose of justice or not, so to decide them. The law is not so false to itself as to require its own permanent overthrow, unless the subversion be necessary to the public interests; and whether it be so necessary in a given case or not, is for the court to decide, as a

matter of legal discretion, whenever the rule is invoked."
*Hart* v. *Burnett,* 15 Cal. 530, *vide* op. 607. Consistency pur-
chased by adherence to decisions at the sacrifice of sound prin-
ciple is dearly bought. But we deem it unnecessary to further
pursue this discussion, for we know quite well that there is not
a court in England or America that has not corrected erro-
neous departures from the principles of justice by overthrow-
ing previous decisions. The question was presented in *Hib-
bits* v. *Jack,* 97 Ind. 570, as it is here presented, and was
decided, after careful consideration, as we now decide it.

Much as we respect the principle of *stare decisis,* we can not
yield to it when to yield is to overthrow principle and do in-
justice. Reluctant as we are to depart from former deci-
sions we can not yield to them, if, in yielding, we perpetuate
error and sacrifice principle. We have thought it wisest to
overrule outright rather than to evade, as is often done, by
an attempt to distinguish where distinction there is none. We
have preferred the censure that sometimes falls upon us rather
than undertake to distinguish, and thus make "confusion
worse confounded," where there is no room to limit or dis-
tinguish. *Hines* v. *Driver,* 89 Ind. 339.

In this instance the case which was in part overruled in
*Krug* v. *Davis, supra,* is a single case upon an isolated ques-
tion, affecting very few persons, and upon a subject recently
introduced into our law. There is therefore no principle of
public policy violated and no extensive property rights af-
fected by its overthrow. These considerations bring the case
very fully within the reasoning of *Hines* v. *Driver, supra.*
But more important than these considerations is the fact that
it was necessary to depart from *Barnhizel* v. *Ferrell, supra,*
in order to do justice, harmonize the law for the adoption of
children with our general system of descents and with the
latest expression of legislative intent manifested in the act
of 1883.

Judgment affirmed.

Filed Feb. 10, 1885.