## HARTINGER and others *v.* FERRING and others.[1]

*(Circuit Court, N. D. Iowa, E. D.* June 9, 1885.)

PARENT AND CHILD—INHERITANCE BY ILLEGITIMATE CHILD—PROOF OF PATERNITY AND RECOGNITION—CODE IOWA, § 2466.

To enable an illegitimate child to inherit, under section 2466 of the Iowa Code, it must appear that the recognition or proof of paternity relied upon, occurred after the passage of the act by the legislature.

At Law. Demurrer to petition filed by Justina Kahl, intervenor.

*Longueville & Lenehan,* for plaintiffs

*Utt Bros.*, for intervenor.

SHIRAS, J. In January, 1881, one Joseph Koetzl died intestate at Dubuque, Iowa. The defendant Peter Ferring was appointed administrator of the estate by the circuit court of Dubuque county. After the payment of all claims against the estate, there was left in the hands of the administrator the sum of $3,765, which he was ordered by the circuit court to pay over to the heirs of the decedent. The plaintiffs herein brought this action against the administrator, for the purpose of establishing their right to the fund as next of kin and heirs at law of Joseph Koetzl. The intervenor, Justina Kahl, with leave of the court, filed a petition of intervention, wherein she asserts that she is the illegitimate daughter of Koetzl; that she was born in the kingdom of Bavaria on the eleventh of April, 1834, and has

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

ever since been and is now a resident of Bavaria; that "said Joseph Koetzl in his life-time, to-wit, from the time of her birth up to the year 1850, in the kingdom of Bavaria, recognized her, said Justina Kahl, as his child, and that such recognition was general and notorious; that on the fourteenth day of May, 1834, in certain proceedings had before the royal Bavarian county court, it was determined and adjudged that said Justina Kahl was the illegitimate daughter of said Joseph Koetzl; and the intervenor claims that such recognition and adjudication enable her to inherit her father's property under the provisions of section 2466 of the Code of Iowa, which enacts that illegitimate children "shall inherit from the father, whenever the paternity is proven during the life of the father, or they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing."

To this petition the plaintiffs interpose a demurrer on the ground that the alleged adjudication by the court in Bavaria was had, and the acts of recognition took place, before the Code of 1851 took effect; and that previous to that time, under the laws of Iowa, an illegitimate child could not inherit the estate of the father, even though the paternity had been fully established or recognized.

Previous to the adoption of the Code of 1851, the provisions of the statute in force did not change the rule of the common law that an illegitimate child could not inherit the estate of the father. The Code of 1851 enacted that illegitimate children should "inherit from the father, whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing." By the Code of 1873 it is provided that such children may also inherit "from the father whenever the paternity has been proven during the life of the father."

The question presented for determination is whether the adjudication of paternity and recognition of the relationship had and performed before the enactment of the Codes of 1851 and 1873, should be held sufficient, under these statutes, to confer the right of inheritance, or whether the intervenor must show a recognition since the adoption of the Code of 1851, or an adjudication since the passage of the Code of 1873. This question was before the supreme court of Iowa in the case of *Crane* v. *Crane,* 31 Iowa, 296, but was not ruled upon; and my attention has not been called to any other case in which the question has been determined by the supreme court of Iowa.

On part of the intervenor it is claimed that the rule of inheritance is always subject to legislative control, and may be changed at any time, and that such change will affect the *status* in all cases save those wherein vested rights have accrued. It cannot be questioned that the mere expectation of inheriting property is not deemed to be a vested right, and the rules of descent may be lawfully changed, and such change may affect all estates not already passed to the heir by the death of the owner. Under this doctrine it is clear that it was

within the power of the legislature, when adopting the Codes of 1851 and 1873, to modify or change the rules of descent previously in force, and such changes would be applicable to all estates vesting after the taking effect of these Codes. Thus, if the legislature had, in 1851, enacted that illegitimate children, if their paternity was thereafter acknowledged in writing, should inherit equally with legitimate issue, it could not be questioned that the rule thus established would control in all cases to which it was applicable, and in which the estate had not vested before the taking effect of the legislative enactment.

The question to be determined in this cause, however, is not so much the right or authority of the legislature to change the rules of descent, as it is the true meaning of the enactment; that is to say, whether it was the intent of the legislature to provide that a past recognition of paternity should have the effect of conferring rights of inheritance, or must such recognition have been made after the passage of the act? It is clear from the very language of the statute that it was not intended to confer the right of inheritance upon all illegitimate children. The Code of 1851 makes the right of inheritance in case of illegitimacy depend upon the performance of certain acts by the father. After the adoption of the Code of 1851, the acts of recognition contemplated in the statute had attached thereto certain legal consequences, and the presumption legally arises that the father recognizing his illegitimate children in the modes pointed out by the statute intends, by such recognition, to confer upon them the right of inheritance. If, however, it be held that the statute is intended to give force to acts of recognition performed before the adoption of the Code, then we give an effect to an act which it did not legally have when performed. The statute would thus be given a retroactive effect, and an act which, when done, had no legal significance, and was not intended nor understood by the parties to it to affect any right of inheritance, would be held to confer such a right. Whatever may be said of the power of the legislature to thus attach to an act done a legal significance which it did not possess when done, it is clear that it will not be presumed that it was the intent of the legislature to make the statute retroactive in this particular, unless such intent is clearly established by the language of the statute. The ordinary presumption is that statutes are intended to be prospective alone in their operation.

There is nothing found in the section of the Code in question, nor in the context, which indicates any purpose to make the statute retroactive. The better rule would seem to be, therefore, to hold that, to enable an illegitimate child to inherit under this section of the Code, it must appear that the recognition or proof of paternity relied upon, occurred after the passage of the act by the legislature; it being, in the language of the supreme court in *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 260, "most reasonable so to construe the law as to enable the father to perceive all the consequences of his recognition at the

time he made it." The reasoning in the case just cited, and in that of *Brown* v. *Belmarde,* 3 Kan. 53, is directly applicable to the question involved in this cause, and supports the conclusion reached.

The demurrer to the intervening petition is therefore sustained.