## TOWNSEND ET AL. *v.* MENELEY.

[No. 5,302. Filed May 11, 1905. Rehearing denied November 28, 1905. Transfer denied January 12, 1906.]

1. DESCENT AND DISTRIBUTION.—*Illegitimate Children.—Common Law.*—At the common law an illegitimate child was not an heir of its deceased father. p. 129.

2. SAME.—*Illegitimate Children.—Statutes.*—Under §2630 Burns 1901, §2475 R. S. 1881, Acts 1853, p. 78, §1, an illegitimate child could inherit from its father only where such father left no legal heirs within the United States, nor legitimate children without the United States. p. 129.

3. SAME.—*Illegitimate Children.—Statutes.—Repeal.*—The act of 1901 (Acts 1901, p. 288, §2630a Burns 1901), providing that illegitimate children shall be heirs of their fathers under cer-

tain circumstances, repeals the act of 1853 (Acts 1853, p. 78, §1, §2630 Burns 1901, §2475 R. S. 1881) upon the same subject. p. 130.

4. WORDS AND PHRASES.—*"Acknowledge."*—The word "acknowledge" means to admit, to own, to confess or to recognize a truth or fact.    p. 131.

5. STATUTES.—*Construction.—Meaning of Words.*—In the construction of a statute words are to be given their ordinary meaning unless that would defeat the manifest intent.    p. 132.

6. DESCENT AND DISTRIBUTION.—*Illegitimate Children.—Burden of Proof.*—The burden of proof to establish that plaintiff, is the illegitimate child of her father and that he acknowledged her to be his child, is upon plaintiff.    p. 132.

7. SAME.—*Illegitimate Children.—Acknowledgment.—Evidence.*—Where decedent told respective witnesses that the plaintiff, an illegitimate child, "was dead sure mine;" "was his'n;" was the only child he had; "she [plaintiff's mother] had had a child and it was his'n," acknowledgment of paternity is sufficiently shown, there being no contradictory evidence.    p. 132.

8. SAME.—*Heirs.—When Persons Become.*—A person becomes an heir at the death of the ancestor, and not before.    p. 134.

9. STATUTES.—*Remedial.—Construction.—Descent and Distribution.—Illegitimate Children.*—Statutes providing that under certain circumstances illegitimate children shall be heirs of their fathers are remedial and should be liberally construed. p. 134.

10. SAME.—*Retroactive.—Descent and Distribution.—Illegitimate Children.*—Under §2630a Burns 1901, Acts 1901, p. 288, an illegitimate child, acknowledged by the intestate ancestor to be his, such ancestor leaving no legitimate children or descendants thereof, inherits such ancestor's estate, although such ancestor's acknowledgment of such child occurred before the taking effect of such statute, and not afterwards.    pp. 134, 138.

From Hendricks Circuit Court; *Thomas J. Cofer,* Judge.

Suit by Dora Meneley against William Townsend and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Brill & Harvey* and *McBride, Denny & Denny,* for appellants.

*Isaac A. Love, W. R. Jewell, Jr.* and *James L. Clark,* for appellee.

WILEY, J.—This was a suit for the partition of real estate, in which appellee was plaintiff. While the complaint is in three paragraphs, the facts upon which the rights of the parties depend are briefly stated in the second. It is there alleged that Marion Townsend died intestate, seized in fee simple of an undivided two-thirds interest in the real estate in controversy; that he never married; that he died without lawful issue or the descendants of lawful issue; that he left the appellee surviving, she being his issue by Keziah Kenworthy, born out of wedlock; that the intestate during his lifetime acknowledged appellee as his own child; that he left surviving him appellants, who were his brothers; that appellant Charles owned the undivided one-third of said real estate, and that no person or persons had any right, title or interest therein except appellee and appellant Charles. Appellant William was made a party, as disclosed by the other paragraphs, because he, in connection with Charles, was in possession, etc. The issues were joined by an answer in denial. Trial by court, resulting in a finding for appellee and a decree ordering partition.

Appellant's motion for a new trial was overruled, and such ruling is the only error assigned. While the motion alleged several reasons why a new trial should be granted, the only one argued is that the decision is not sustained by sufficient evidence.

The question for decision involves the right of an illegitimate child to inherit from its putative father under our statute, for, if it can inherit, it must be by virtue of a statutory right, for at common law that right was denied.

The first legislation in this State upon the subject in hand was in 1853 (Acts 1853, p. 78), and section one of the statute then enacted is as follows: "The real and personal estate of any man dying intestate, without heirs resident in any of the United States

at the time of his death, or legitimate children capable of inheriting without the United States, shall descend to and be invested in his illegitimate child or children who are residents of this State or any of the United States; and such illegitimate child or children shall be deemed and taken to be the heir or heirs of such intestate in the same manner, and entitled to take by descent or distribution to the same effect and extent as if such child or children had been legitimate: Provided, that the intestate shall have acknowledged such child or children as his own during his lifetime; and provided, further, that the testimony of the mother of such child or children shall in no case be sufficient to establish the fact of such acknowledgment." §2630 Burns 1901, §2475 R. S. 1881. Under this statute the brothers and sisters of the intestate, who died without lawful issue, inherited his estate in preference to an illegitimate child, if he left one. *Bourroughs* v. *Adams* (1881), 78 Ind. 160.

It will be observed both from the statute and the case cited that if an intestate left an illegitimate child or children, and also brothers and sisters, the latter took the estate, and the former were left remediless. This being true, the legislature undertook the duty of caring for the interests of illegitimate children, who at common law were fatherless, and had no right to inheritance. They were mere outcasts, and it was an act of humanity, quickened by good conscience and advancing civilization, for the legislature to remove, so far as possible, the blight and curse of their illegitimacy, and clothe them with the rights of inheritance under such conditions as it might impose.

And so in 1901 (Acts 1901, p. 288 §1, §2630a Burns 1901) the legislature passed the following statute: "That the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his lifetime as his own, shall inherit his estate, both real and personal, and shall be deemed and taken to be the heir or heirs of such intestate in the

same manner and to the same extent as if such child or children had been legitimate: Provided, that the testimony of the mother of such child or children shall in no case be received to establish the fact of such acknowledgment; and be it further provided that the provisions of this act shall not apply where the father of the illegitimate child, at his death, had surviving legitimate children or descendants of legitimate children." By section two of that act "all laws and parts of laws in conflict with the provisions of this act" were expressly repealed. We have no doubt, therefore, that the act of 1901, *supra,* repealed the act of 1853, *supra,* and that the rights of the parties must be determined by the latter act as applied to the facts established by the evidence.

There is no controversy about the following facts: Marion Townsend was never married. No legitimate issue of his body survive him. He died the owner of the real estate in controversy. Appellants were in possession thereof. They denied appellee's rights therein. Appellee was the illegitimate child of the intestate.

There are two points af contention which will be considered in their order: (1) Does the evidence establish the fact that Marion Townsend "during his lifetime" acknowledged appellee "as his own" child ? Appellee assumes that the evidence does establish this fact, while the contrary is earnestly contended for by appellants. It should be remembered that the language of the statute is "that the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his lifetime as his own, shall inherit," etc.

The words "acknowledge" or "acknowledged" have no fixed legal meaning. They are not given or defined in the law dictionaries. We must therefore look to their 4. common or ordinary meaning, for that is the sense in which the legislature used the word "acknowledged." "Acknowledge" means "to own or admit the

knowledge of; to recognize as a fact or truth; * * * to own or recognize in a particular character or relationship." Webster's Dict. As the Psalmist said: "I ackowledge my transgressions." Solomon (Prov. 3 :6) said: "In all thy ways acknowledge Him." Thus a man acknowledges a secret marriage; that is, he admits it. One who has done wrong may acknowledge his fault, and thus confess his error.

Words used in a statute are to be given their ordinary meaning, unless that would defeat the manifest legislative intent. *City of Evansville* v. *Summers* (1886), 108 Ind. 189; *Bishop* v. *State, ex rel.* (1898), 149 Ind. 223, 39 L. R. A. 278, 63 Am. St. 279. The statute does not fix any method or standard by which a putative father may acknowledge his illegitimate offspring, but has left the fact of such acknowledgment to be established by evidence in each particular case, as any other fact is established. In some of the states the legislature has defined what shall constitute acknowledgment by the father of his illegitimate child. Thus, in South Dakota, it must be in writing signed by the father in the presence of competent witnesses. In Iowa, such "recognition must have been general and notorious, or else in writing." The Kansas statute contains the same provision.

As to the issue of appellee's having been acknowledged by the intestate as his own child, the burden was upon her, and before she would be entitled to inherit under the statute it was incumbent upon her to show an acknowledgment that was clear and unambiguous, and such as would exclude all but one interpretation. 3 Am. and Eng. Ency. Law (2d ed.), 897.

The evidence clearly establishes the fact that Marion Townsend "acknowledged" appellee as his child, within the meaning of the word as used in the statute. To one person who testified in the case, in speaking of Miss Kenworthy, the mother of appellee, to

whom he referred as "the kid," the intestate said:   "It was dead sure mine."   The same witness testified:   "We asked him whose kid it was [referring to appellee], and he said 'his'n.' "   One witness who lived in the same town where appellee lived, testified that he met the intestate in Indianapolis, who asked him how Dora (meaning appellee) was; that witness answered that she was all right, and that he replied that that was the only child he had.   Another witness testified as follows:   "Did you ever have any other conversation about this child [referring to Miss Kenworthy's child]?   A.   Oh! I don't recall any special conversation.   Now what was said about the child?   State as fully as you can.   A. Well, I can't; simply the child was his own.   What child was his?   A.   Well he said this Keziah Kenworthy he had ruined, she had had a child and it was his'n.   That is what he said exactly."   There was other evidence of the same character, and no showing made to the contrary.   It is fair to say that when the statute of 1901 went into effect Marion Townsend was an inmate of a private sanatorium; that he was of unsound mind, and died in that condition.   All the evidence going to establish the fact of his acknowledgment of appellee as his child referred to times antedating May 15, 1901, when the statute went into force.

. Having reached the conclusion that the evidence establishes the fact that Marion Townsend acknowledged appellee "during his lifetime as his own child," within the meaning and intent of the statute, we come to the consideration of the only remaining question about which there is any contention, viz.:   (2)   Can appellee inherit under the provisions of the statute, where it appears that the only acknowledgement by the intestate that his illegitimate offspring was his own child antedated the time when the statute went into effect?   The statute under consideration has never been before the courts of appeal for construction, and hence the question presented is one of first impression

in this jurisdiction. When the statute was enacted and went into effect both appellee and her putative father were in being. They came within the class defined by the act. The legislature declared that an illegitimate child, its father having acknowledged it as his own during his lifetime, would be entitled to inherit his estate. The only material difference between the act of 1853, *supra,* and that of 1901, *supra,* is that the words "without heirs" in the former were omitted from the latter, thus showing the manifest intent of the legislature to give a preference to an illegitimate child over other heirs,. except as to legitimate children. The statute says that such illegitimate child or children "shall be deemed and taken to be the heir or heirs of such intestate," etc.

The inquiry here suggests itself: When is a child an heir? The supreme court of South Dakota has answered that inquiry in the following language: "Manifestly, upon the death of its ancestor, an heir, as the term is here used, is always appointed by the law. Its title is called into existence by the death of its ancestor, and its rights are governed by the law in force at the time of such death." *Moen* v. *Moen* (1902), 16 S. Dak. 210, 92 N. W. 13. In the case just cited the court had under consideration a statute similar to the one now before us, and we may have occasion again to refer to it.

Statutes of this character are remedial, and should be liberally construed so as to carry out the manifest intention of the legislature. Black, Interp. of Laws, p. 311; *Brower* v. *Bowers* (1850), 1 Abb. App. Dec. 214; *Beall* v. *Beall* (1850), 8 Ga. 210; *Swanson* v. *Swanson* (1852), 2 Swan (Tenn.) 445.

Without specially considering the question as to whether this statute is retroactive or wholly retrospective, we are content to rest the question upon the reasoning of the supreme court of Iowa, as expressed in the case of *Alston* v. *Alston* (1901), 114 Iowa 29, 86 N. W.

55.   In that case the court had under consideration the Iowa statute to which reference has been made.   To entitle an illegitimate child to inherit from its putative father under the Iowa statute, he had to show that the father recognized him as his own child during his lifetime, as the statute declared that such recognition must be open and notorious, or in writing, etc.   The acts and words of recognition antedated the passage of the statute, and in discussing the statute as applied to the proved facts, the court said:   "Appellees insist that the evidence of recognition must be strictly limited to acts and conversations subsequent to the time when such recognition would by law entitle the plaintiff, if an illegitimate son, to inherit.   For this contention they cite the case of *Hartinger* v. *Ferring* [1885], 24 Fed. 15, in which the circuit court of the United States for the northern district of Iowa reached the conclusion contended for; but we think this position is untenable.   The legislature having the right to determine the rules of inheritance in accordance with which the property of persons subsequently dying shall be distributed, may provide as it sees fit with reference to who shall be heirs.   There is no vested right to inherit until the death of the ancestor.   It may therefore be provided that illegitimate children already born and recognized shall be considered heirs.   The recognition contemplated by the statute is not recognition as prospective heir, but recognition as an illegitimate child; and whoever fulfils the conditions of the statute as to the right to inherit, existing at the time of the death of the ancestor, is entitled to inherit under the statute.   There is nothing in the language indicating that it was to be applicable to such recognition as should afterwards be made.   It describes a class of persons, and declares that persons of that description shall inherit; it does not refer to or create a status.   It is prospective in its operations as to the right, but there is nothing to suggest that persons of the class described—that

is, illegitimates already recognized—shall not inherit under it. It would be just as reasonable to limit the provisions of the statute to illegitimates afterwards begotten and born as to so limit it to illegitimates afterwards recognized, and it would be just as reasonable in the one case as in the other to argue that to adopt a construction making it applicable to existing illegitimate children would be to give the statute a retrospective effect. But it is not contended by appellees that the statute is to be limited to illegitimates subsequently begotten and born."

Counsel for appellants, to support the proposition that appellee can not inherit under our statute, because, if her putative father ever acknowledged her, it was before the statute became effective, cite, among others, the following cases: *Brown* v. *Belmarde* (1864), 3 Kan. 41, 53. *Stevenson* v. *Sullivant* (1820), 5 Wheat. *207, 5 L. Ed. 70. In *Alston* v. *Alston, supra,* the court disposes of the above-cited cases as follows: "The cases of *Brown* v. *Belmarde* [1864], 3 Kan. 41, and *Stevenson* v. *Sullivant* [1820], 5 Wheat. *207, 5 L. Ed. 70, as well as the case of *Rice* v. *Efford* [1808], 3 H. & M. (Va.) 225, on which the latter of these two cases is based, all relate to inheritance by illegitimates under a statute passed after the death of the ancestor, and whatever language may have been used apparently supporting the decision in *Hartinger* v. *Ferring* [1885], 24 Fed. 15, must be regarded as pure dictum."

It is but fair to say that the case of *Hartinger* v. *Ferring, supra,* was decided by Judge Shiras as one of the judges of the eighth federal circuit, and the case turned upon the construction of the Iowa statute, just as in the case of *Alston* v. *Alston, supra,* and he held the recognition required by the putative father must have occurred after the passage of the act. The decision in *Hartinger* v. *Ferring, supra,* was rendered in June, 1885, before the supreme court of Iowa had construed the statute. The general rule is that the construction put upon a statute

of a state by the courts of that state will be accepted and followed by the courts of the United States. *McKeen* v. *Delancy* (1809), 5 Cranch *22, 3 L. Ed. 25; *Bucher* v. *Cheshire R. Co.* (1888), 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; *Dundee Mortgage, etc., Co.* v. *Parrish* (1885), 24 Fed. 197. *Alston* v. *Alston, supra,* was decided in 1901, and if, prior to the decision of the case of *Hartinger* v. *Ferring, supra,* the supreme court of Iowa had construed the statute as it did in the Alston case, we have no doubt but that the federal court would have followed it. The Alston case is so directly in point, and the reasoning so sound, that we accept and adopt it as the law.

*Moen* v. *Moen* (1902), 16 S. Dak. 210, 92 N. W. 13, follows the rule declared in *Alston* v. *Alston, supra.* In the Moen case the court said: "No one has any vested rights in his ancestor's property until the latter's death. He may not survive the ancestor. The ancestor may dispose of the property by will, or the law of succession may be changed before his title becomes vested. * * * Has the paternity of the person claiming to be an heir been acknowledged by the deceased ? * * * The time and place of such acknowledgment are not prescribed by · the statute. It may have been made at any place and at any time after the birth of the claimant and before the death of the ancestor. * * * There is, therefore, no merit in the contention that the acknowledgment in this case is ineffectual because it was executed before the statute took effect." These authorities are in harmony with the spirit of the statute which they interpret and construe, and appeal to us as declaring a just principle of law as applied to our own statute.

Appellee having established, by competent evidence, that her putative father "acknowledged" her "during his lifetime as his own" child, although such acknowledgment was before the statute took effect, our conclusion is that the statute makes her his heir, and confers upon her the

right to inherit his estate, to the exclusion of appellants, who are his brothers.

Judgment affirmed.

## ON PETITION FOR REHEARING.

ROBY, J.—The petition for a rehearing is based upon the contention that the acknowledgment contemplated by the act of 1901 (Acts 1901, p. 288, §1, §2630a Burns 1901), was an acknowledgment made after the taking effect of said act. The argument supporting the proposition is, briefly, that the father ought to be held to have spoken in the light of the law as it was, and that an acknowledgment ought not to be given a new meaning and effect which he could not at the time have contemplated. The fault with this argument is that it treats the acknowledgment as having to do only with the right of inheritance. The father may be impelled to such acknowledgment by many other than property considerations, promptings of natural affections, emotions of repentance, of pity, a desire to be just and to repair his previous delinquencies, may, any or all of them, furnish an adequate reason for making an acknowledgment of the truth. It is not an acknowledgment of the right of the child to inherit property that is provided for by statute. It simply specifies what shall be evidence to prove the relation of parent and child under certain circumstances. The effect of such evidence is to make the child a member of a class for which provision as to inheritance is made by the legislature. The members of this class are as clearly entitled to inherit under statutes subsequently passed for their benefit, as the legitimate children, prior to the passage of an act relative to the inheritance of property by them, would be entitled to its benefits. It would be illogical in either case to hold that only children born after the legislative enactment could derive benefit therefrom.

Petition for rehearing overruled.