## MORIN ET AL. v. HOLLIDAY ET AL.

[No. 5,617. Filed May 8, 1906. Rehearing denied October 3, 1906. Transfer denied December 13, 1906.]

1. DESCENT AND DISTRIBUTION.—*Ancestors.*—*Prior Death of Expectant Heir.*—An expectant heir takes no interest by descent in the property of his ancestor, where such heir predeceases such ancestor. p. 206.

2. SAME.—*Kindred.*—*How Computed.*—Descent, in Indiana, is wholly regulated by statute, the degrees of kindred being computed according to the civil law rules. Neither the common law nor civil law canons of descent, as such, were ever in force in such State. p. 206.

3. SAME.—*Grandchildren.*—Where the mother predeceases her father, her children, to take by descent, must take as heirs of their grandfather, and not as heirs of their mother. p. 206.

4. SAME. — *Illegitimate Children.* — *Statutes.* — Under §2630a Burns 1901, Acts 1901, p. 288, §1, illegitimate children are heirs of their fathers, where such fathers acknowledged them, and left no legitimate children, nor descendants thereof. p. 207.

5. SAME.—*"Heirs."*—*Common Law.*—At the common law an "heir" was a person born or begotten in lawful wedlock, and upon whom the law, on the death of the ancestor, cast an estate in lands, tenements or hereditaments. p. 207.

6. SAME.—*"Heirs."*—*Civil Law.*—In the civil law "haeres," or "heir" imports a person entitled to succeed to the ancestor's estate, whether real or personal, either by act of the ancestor or by the operation of law. p. 207.

7. SAME.—*"Heirs."*—*Legal Import.*—The word "heirs" is not a word of purchase, but represents those persons, immediate or removed, who take, by operation of law. p. 207.

8. SAME.—*Heirs.*—*When Persons Become.*—The rule that there can be no legal heirs of a living person is expressed in the maxim *"Nemo est haeres viventis."* p. 208.

9. SAME.—*Heirs.*—*Appointment.*—*Discretion of Legislature.*—Heirship is governed by the laws in force at the ancestor's death; and who the heirs shall be rests in the discretion of the legislature. p. 208.

10. SAME.—*Illegitimate Children.*—*Statutes.*—*Construction.*—The statute (§2630a Burns 1901, Acts 1901, p. 288, §1), providing that illegitimate children, under certain circumstances, shall be

heirs of their fathers, must be construed in the light of all other statutes regulating descent and distribution.   p. 208.

11.  DESCENT AND DISTRIBUTION.—*Illegitimate Children.—Statutes.*—Section 2630a Burns 1901, Acts 1901, p. 288, §1, making illegitimate children heirs of their father, under certain conditions, provides for a new line of succession, and creates a new and distinct class, who take by inheritance.   p. 209.

12.  SAME. — *Statutes. — Construction.—Illegitimate Children.*— The statute (§2630a Burns 1901, Acts 1901, p. 288, §1), making illegitimate children heirs of their fathers, under certain circumstances, is remedial, and should be liberally construed. p. 209.

13.  SAME.—*Illegitimate Children.*—Illegitimate children, at the common law, had no rights of inheritance from the father. p. 209.

14.  SAME. — *Legitimate Children. — Children of.* — Though the legitimate child should predecease the father, its child inherits directly from the grandfather the share belonging to its parent. p. 209.

15.  SAME.—*Illegitimate Children.—Statutes.*—The statute (§2630a Burns 1901, Acts 1901, p. 288, §1) making illegitimate children, under certain circumstances, heirs of their fathers "in the same manner and to the same extent as if they had been his legitimate children," gives them equal rights with legitimate children, where the statute operates at all.   p. 209.

16.  SAME.—*Illegitimate Children.—Children of.*—The children of illegitimate children inherit from the parent under §2630a Burns 1901, Acts 1901, p. 288, §1, the same as legitimate children inherit from a legitimate parent.   p. 210.

17.  STATUTES.—*Construction.—Extrinsic Aids.*—In the construction of a statute the courts will consider all other laws upon the same subject-matter, the common law, the reasons for the enactment, the principles of equity, the objects of the statute and the conditions obtaining when the statute was enacted. p. 210.

18.  DESCENT AND DISTRIBUTION. — *Illegitimate Children. — Statutes.*—The children of an illegitimate child, being grandchildren of their grandfather by nature, become his heirs, under §2630a Burns 1901, Acts 1901, p. 288, §1, the same as if the parent were legitimate, where such grandfather acknowledged such child and left no legitimate children or descendants thereof. p. 211.

19. DESCENT AND DISTRIBUTION.—*Adopted Children.—Statutes.*—Under §837 Burns 1901, Acts 1883, p. 61, §1, adopted children inherit from their adopting parents the same as if they were natural heirs. p. 212.

20. SAME.—*Adopted Children.—Children of.*—The children of an adopted child, under §837 Burns 1901, Acts 1883, p. 61, §1, take the parent's share in the adopting parent's estate. p. 213.

21. SAME. — *Illegitimate Children.—Status.—Statutes.*—Section 2630a Burns 1901, Acts 1901, p. 288, §1, changes the legal status of illegitimate children to that of legitimate children, where their fathers acknowledged them and left no legitimate children or their descendants. p. 213.

22. WORDS AND PHRASES.—*"Illegitimate Child or Children."—Descent and Distribution.*—The words "illegitimate child or children," as used in §2630a Burns 1901, Acts 1901, p. 288, §1, include the lawful descendants of such child or children. p. 214.

23. SERVICE.—*Nonresident Notice.—Publication.—Stating Object of Suit.*—The publication of a notice showing that a suit to quiet title has been filed by plaintiff and that the nonresident defendant is a necessary party thereto is sufficient. p. 215.

From Franklin Circuit Court; *Ferdinand S. Swift,* Judge.

Suit by John Holliday against John C. Morin and others. From a decree for plaintiff, defendants appeal. *Reversed.*

*L. J. Crawford, Lawrence Maxwell* and *Edgar O'Hair,* for appellants.

*Albert T. Root, Thomas P. Bodkin, H. J. Milligan, Samuel B. Hammel, Coppock & Coppock, John K. Love* and *F. M. Alexander,* for appellees.

WILEY, J.—This was a suit to quiet title to real estate, in which John Holliday was plaintiff, and all of the appellants were defendants. The complaint was in a single paragraph, upon which issues were joined by answers and replies. The appellant John C. Morin filed a cross-complaint, to which a demurrer was sustained. The cause was tried by the court, and resulted in a finding and judgment for the plaintiff below. Overruling appellants' motion for a new trial, and sustaining the demurrer to the cross-com-

plaint of John C. Morin, are assigned as errors. After judgment, and before the appeal was perfected, John Holliday died, and the appellees were substituted in his stead. The appellee Catherine Holliday is the surviving widow, and the appellee Angeline Holliday is the surviving mother of John Holliday, and they are his sole and only heirs. The appellants John C. Morin, Annie M. Johnson, George E. Morin, and Albert C. Morin are the surviving children and heirs of Clara Morin, deceased. The appellant Ida May Morin is the wife of John C. Morin; the appellant Frank G. Johnson is the husband of Annie M. Johnson; Ida Morin is the wife of Albert C. Morin; and they were made parties below and appellants here on account of their marital relations.

The facts upon which the rights of the respective parties must be determined are as follows: John Cline died intestate on August 19, 1902, and was at the time of his death the owner in fee simple of the real estate in controversy. He left surviving him no widow, no legitimate child or children, or descendants of legitimate children, no father, mother, grandfather, or grandmother, no brothers and no sisters. He left surviving him the plaintiff below, John Holliday, his illegitimate child, and the only child surviving him. From the birth of said Holliday said Cline, up to the time of his death, openly acknowledged, received, reared, educated, and supported him as his own child. Appellants John C., George E., and Albert C. Morin, and Annie M. Johnson, were the only legitimate children of Clara Morin, who was the illegitimate child of John Cline. Said Clara Morin died intestate June 7, 1892, leaving the above and foregoing named children surviving her. From the birth of said Clara Morin until her death said Cline openly acknowledged, received, reared, educated, and supported her as his own child. Until the death of said Cline he at all times openly acknowledged, received, and claimed the above named children of Clara Morin as his grand-

children.   Upon these facts and the statute to which we will later refer appellees insist that, as the mother of appellants died before her putative father, they have no interest in the real estate; that upon his death the title vested in John Holliday by descent, and that upon the latter's death the entire estate went to them as the only heirs of Holliday. On the other hand, appellants claim, as the legitimate heirs of Clara Morin, that they are entitled to an undivided one-half interest therein.

The statute upon which the contending parties base their right to inherit from John Cline is section one of the act approved March 9, 1901 (Acts 1901, p. 288), §2630a Burns 1901), which is as follows: "That the illegitimate child or children of any man dying intestate and having acknowledged such child or children during his lifetime as his own, shall inherit his estate, both real and personal, and shall be deemed and taken to be the heir or heirs of such intestate in the same manner and to the same extent as if such child or children had been legitimate: Provided, that the testimony of the mother of such child or children shall in no case be received to establish the fact of such acknowledgment; and be it further provided, that the provisions of this act shall not apply where the father of the illegitimate child, at his death, had surviving legitimate children or descendants of legitimate children." Upon the facts recited and this statute, there is no doubt that upon the death of John Cline, his illegitimate son, John Holliday stood in the line of inheritance from him. Appellants concede this, but assert that they are also in the line of inheritance, and that John Holliday inherited only the undivided one-half of the real estate, and that they inherited the other undivided one-half. This court, in two recent cases, has had occasion to construe this statute upon facts similar to those in the case at bar, as to the right of an illegitimate child to inherit from its putative father, in each of which cases such right is affirmed. *Townsend* v.

*Meneley* (1906), 37 Ind. App. 127; *Daggy* v. *Wells* (1906), 38 Ind. App. 27.

In the case we are now considering, if Clara Morin, the illegitimate daughter of John Cline, had survived him, she would have been in the same line of inheritance as John Holliday, and they would have taken the real estate under the statute as tenants in common. She died, however, about nine years before the enactment of this statute, and over ten years before the death of her putative father. It is clear that at the time of her death she had acquired no rights in and to any of the property, either real or personal, of John Cline. Inheritance under the statute can only follow upon the death of the ancestor.

The question, therefore, for decision, is this: Does the statute give to the children of Clara Morin the right to inherit the interest in the real estate which she would have inherited had she survived her putative father? This question opens a new field for legal exploration in this State, and counsel have not called our attention, nor has our research led us, to any case in other jurisdictions where the question has been decided. It is, therefore, a question of first impression.

The entire scheme of descents in this State is regulated and controlled by statute. The degrees of kindred are computed according to the rules of civil law, and the statute of descent covers every conceivable state of circumstances that can surround the descent of property. Neither the common law nor the civil law canons of descent, as such, were ever in force in this State. *Cloud* v. *Bruce* (1878), 61 Ind. 171; *Bruce* v. *Bissell* (1889), 119 Ind. 525, 12 Am. St. 436.

If appellants are entitled to share in the real estate in controversy under the law of descent, they possess such right as direct heirs of John Cline, and not as heirs of Clara Morin, for she died before her putative father, and hence had acquired no title under the

statute.   There cannot descend to a child from its parent any interest in property, either real or personal, that the latter did not possess.

The statute upon which the contending parties base their rights of inheriting from John Cline makes illegitimate children "heirs" of their putative father under certain conditions:  Those conditions are:  (1) The acknowledgment by the father during his lifetime that such child or children is or are his own; (2) that the father, at his death, left surviving no legitimate children, or descendants of legitimate children.

At common law an heir is one who is born or begotten in lawful wedlock, and upon whom the law casts an estate in lands, tenements, or hereditaments, immediately upon the death of his ancestor.

"In the civil law *haeres,* or 'heir,' has a more extended signification than in the common law.  The term is applied to all persons entitled to succeed to the estate of one deceased, whether by act of the party or by operation of law, and whether the property be real or personal in its nature."   15 Am. and Eng. Ency. Law (2d ed.), 318, 319.

In *Kelley* v. *Vigas* (1884), 112 Ill. 242, 54 Am. Rep. 235, it is said:  "The word 'heir,' it is said, when uncontrolled by the context, designates the person appointed by law to succeed to the estate in question, as in case of intestacy, and so the authorities seem to hold.   Who are heirs of a deceased person is determined and declared by statute."

The word "heir" in its legal import or signification, "is not a word of purchase, nor a *designatio personae,* but is *nomen collectivum,* and used as a word of limitation, and will carry the land devised or conveyed not only to the immediate heir or issue, but to all those who descend from the devisee or grantee."   15 Am. and Eng. Ency. Law (2d ed.), 320, and authorities there cited.

It is manifestly clear that no person can sustain the character of heir, properly so called, in the lifetime of the ancestor. This rule rests upon and is embodied in the maxim *"Nemo est haeres viventis."* 15 Am. and Eng. Ency. Law (2d ed.), 326, and authorities there cited.

8.

It seems clear that upon the death of an ancestor an "heir," as the word is here used, is always appointed by law. The title is called into existence by the death of an ancestor, and its rights are governed by the law in force at the time of such death. *Townsend v. Meneley, supra.* It being within the province of the legislature to determine the rules of inheritance in accordance with which the property of persons subsequently dying shall be distributed, it is certain that it may provide, as it sees fit, as to who shall be heirs. There is no vested right to inherit until the death of the ancestor. *Townsend v. Meneley, supra; Alston v. Alston* (1901), 114 Iowa 29, 86 N. W. 55; *Moen v. Moen* (1902), 16 S. Dak. 210, 92 N. W. 13.

9.

Under the specific provisions of the statute and the undisputed facts in this case, Clara Morin, had she survived John Cline, would have been his heir. The statute having created her status, can its provisions be construed and carried forward so as to include her legitimate children? Legal rights are determined by the status of the persons concerned, and the status of the contending parties here is fixed by the statute. What the rights flowing out of that status are can only be ascertained by looking to the rules and statutes constituting the great scheme or body of law, of which the statute creating the status forms a part. *Paul v. Davis* (1885), 100 Ind. 422. The statute under consideration must be regarded as an integral part of the statutory scheme regulating the descent of property. We must construe this statute in the light of

10.

the new rights created, and upon which such rights are to operate.

The statute provides for a new line of succession, and creates a new and distinct class, that may take by inheritance. As was said in *Paul* v. *Davis, supra:* "When we ascertain the status we have secured the key to the main position, for from the status of the persons interested flows the legal right, interest, and title."

In the case of *Townsend* v. *Meneley, supra,* we held that statutes of the character of the one under consideration are remedial, and should be liberally construed so as to carry out the manifest intention of the legislature.

At common law an illegitimate child was regarded as fatherless, and had no right of inheritance. In the eyes of the law it was an outcast, and the statute before us was enacted in the interest of illegitimates, in harmony with good conscience and advancing civilization, in an attempt to remove as far as possible the blight and curse cast upon them by the common law, and to clothe them with the right of inheritance, under certain conditions therein named. A legitimate child is everywhere recognized as an heir of its ancestor, and though it should die before such ancestor, and leave surviving it legitimate children, such children would inherit directly from the ancestor of their parent, the portion of the estate that would have descended to the latter.

Under the facts here, and the plain provisions of the statute, John Holliday and Clara Morin are made the heirs of John Cline in the same manner and to the same extent as if they had been his legitimate children. This particular provision of the statute is significant, in that it makes plain the intention of the legislature. That intention manifestly was to put illegitimates in the line of inheritance and succession, and cast

upon them the same rights as legitimates, whenever the facts in each particular case were such that the statute became operative. In the absence of legitimate children or their descendants, where the putative father "during his lifetime" had acknowledged the illegitimate child as his own, the statute makes such illegitimate child the heir of the putative father, in the same way and sense as though it was legitimate. This being true, it becomes his child and entitled to the same rights as such as if it had been born in lawful wedlock. Under such conditions it is no longer *nullius filius,* as at common law, but becomes his child and direct heir.

While at common law an illegitimate child was fatherless, it is the law of nature and procreation that such child is of the same blood, flesh, and bone of him who begot it. The statute having made an illegitimate child the heir of its father, under conditions named, its right to inherit cannot be taken away, except by the direct and specific act of such father. The legislature having put such a child in the direct line of descent, we can conjure no reason, in morals, law, or equity, why its lawful progeny would not succeed to its rights in the father's estate, provided the latter survived it. To deny this right would nullify both the letter and spirit of the statute, and run counter to the intention of the legislature.

In *Humphries* v. *Davis* (1885), 100 Ind. 274, it was said: "A statute is not to be construed as if it stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was

derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted." *Taylor* v. *Board, etc.* (1879), 67 Ind. 383; *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 42 L. R. A. 826; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 33 L. R. A. 213, 51 Am. St. 174; *Parvin* v. *Wimberg* (1892), 130 Ind. 561, 15 L. R. A. 775, 30 Am. St. 254.

With this rule as our guide, the statute under consideration should be easily construed, and the intention of the legislature adopting it readily ascertained. The first legislation in this State giving to illegitimate children the right to inherit from their putative father was in 1853 (Acts 1853, p. 78, §2630 Burns 1901, §2475 R. S. 1881). Under that act, however, the brothers and sisters, or other direct heirs, inherited the estate in preference to illegitimates. *Townsend* v. *Meneley, supra; Burroughs* v. *Adams* (1881), 78 Ind. 160. By the present statute, which repealed all laws in conflict with it, illegitimates are made heirs of their putative father in preference to all other heirs, except legitimate children or their descendants. (Acts 1901, p. 288, §2630a Burns 1901). This being true, it is evident that it was the intention of the legislature to give to such unfortunate children the same rights as to inheritance from the father as though they had been born in lawful wedlock, provided there were no surviving children or their descendants. Applying, therefore, the rule for the construction of statutes, any construction that deprived them of that right would be a palpable violation of both the spirit and letter of the statute. Remembering that at common law, and prior to the adoption of the statute, an illegitimate child had no inheritable right in its father's estate, applying the principles of equity, the object of the statute, the condition of affairs as they existed, and the evident intention of the legislature to right the wrong of the original transgressor, as far as

possible, we think it clear that when the legislature placed the illegitimate child in the direct line of inheritance as an heir of its father, "in the same manner and to the same extent as if such child * * * had been legitimate," the language of the statute is broad enough to include the lawful issue of such child. As a matter of fact, the children of an illegitimate child are, of necessity, grandchildren of the father of such child. They are made so by the unvarying law of nature. By statute the grandchild of one who dies intestate, if it survive its parent, is entitled to inherit the share of the estate that would have descended to its father or mother. §2623 Burns 1901, §2468 R. S. 1881.

We have a statute authorizing the adoption of children. It provides that such child "shall take the name in which it is adopted and be entitled to and receive all rights and interest in the estate of such adopted father or mother, by descent or otherwise, that such child would if the natural heir of such adopting father or mother." §837 Burns 1901, Acts 1883, p. 61, §1. This statute places the adopted child upon the same plane as that upon which a legitimate child stands, and clothes it with the same right of inheritance as such child. It is important to keep in mind the similarity of the language used in this statute, and the one under consideration. In the former the language is that the adopted child shall *"be entitled to and receive all the rights and interest in the estate of the adopting father or mother * * * that such child would if the natural heir,"* etc. The statute uses both the terms "child" and "heir." The latter statute says that the illegitimate child, upon certain conditions, *"shall be deemed and taken to be the heir * * * of such intestate in the same manner and to the same extent as if such child * * * had been legitimate."* (Our italics.) Under these two statutes we can see no

difference between the inheritable rights of the adopted and illegitimate child.

It is to be observed that §837, *supra,* makes no provision conferring upon the child or children of the adopted child the right of inheritance from the adoptive parent; yet, notwithstanding this, such right exists. The adoptive child becomes the stirps or stock of inheritance. This relation exists between such child and its children. They are the original stock of descent, for they bear the relation of grandchildren to the adoptive parent, and this legal relation does not end with the death of the adoptive child. *Paul* v. *Davis, supra.*

The statute takes away the partition wall between the father and his illegitimate child, and puts the latter in the direct line of inheritance, as against all collateral heirs, and against everyone except legitimate children of the father or their descendants. In the case of an adopted child it is often true that there is no blood kin between it and the adoptive parent, and yet, under the statute, both the adoptive child and its lawful descendants inherit from the adoptive parent. In the case of an illegitimate child, the relation of consanguinity exists between it and its father which no law can dissolve. There is, therefore, greater reason and broader equity for extending the inheritable right to the lawful children of such illegitimate child, from the latter's father, than there is in extending that right, under §837, *supra,* to the legitimate children of an adopted child.

"The object and effect of the statute as to legitimation are to change the status and capacity of an illegitimate child to the status and capacity of a child born in lawful wedlock." 3 Am. and Eng. Ency. Law (2d ed.), 897. And see *Blythe* v. *Ayres* (1892), 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40; *Town of Rockingham* v. *Town of Mount Holly* (1854), 26 Vt. 653; *Williams* v. *Williams* (1883), 11 Lea (Tenn.) 652; *McKamie* v. *Baskerville*

(1887), 86 Tenn. 459, 7 S. W. 194. Statutes of this character are to be liberally construed. *Blythe* v. *Ayres, supra.*

In Tennessee there is a statute similar in effect and purpose to the one before us, and in the case last cited it was held that the obvious purpose and intent in enacting such statute was to entitle illegitimate children to inherit their father's estate the same as legitimate children. In the case of *Town of Rockingham* v. *Town of Mount Holly, supra,* it was held that where an illegitimate child was legitimatized, as provided by statute, it rendered the child legitimate, the same as if it had been born in wedlock, and that it would take as the heir of its father, as one of the legal consequences resulting from such act of legitimation. To the same effect are the cases of *Williams* v. *Williams, supra,* and *McKamie* v. *Baskerville, supra.* The decision in the case of *Ash* v. *Way* (1845), 43 Va. 203, throws much light upon the question before us. In that case Robertson Way, the decedent, was the father of an illegitimate child. Such illegitimate married and died, leaving a legitimate child. The parents of such illegitimate married after her death. Her father, before his marriage, and in the lifetime of his illegitimate child, recognized her as his own child, and also recognized her as such after her death. Upon these facts, under the Virginia statute making an illegitimate child legitimate, it was held that the child of the illegitimate would inherit from her father.

The children of Clara Morin under the facts in this case became the lineal descendants of John Cline. His blood flows in their veins, and they are by nature and by law his grandchildren.

The statute having made her his heir to the same extent as if she had been his legitimate child, there is neither logic nor reason for denying that her children are his grandchildren. From what we have said, and upon reason and the authorities to which we have referred, we are amply justified and firmly supported in

holding that the words "illegitimate child or children," as used in §2630a, *supra,* include lawful descendants of such child or children, and hence embrace grandchildren. *Kyle* v. *Kyle* (1862), 18 Ind. 108; *Scott* v. *Silvers* (1878), 64 Ind. 76. This conclusion brings appellants in the direct line of inheritance, and casts upon them the rights which their mother would have had if she had survived her father.

This leaves but one question for consideration, and that is the motion of two of the appellants to quash the affidavit for publication for nonresident notice, and the publication founded thereon. The objection urged to the affidavit is that it fails to state the object of the suit. The objection is without merit, for the affidavit specifically states that the object of the suit was to quiet title to real estate. This was sufficient. *Field* v. *Malone* (1885), 102 Ind. 251; *Pitts* v. *Jackson* (1893), 135 Ind. 211.

As the cross-complaint of the appellant John C. Morin fully states all the facts upon which he claimed an interest in the real estate in controversy, which facts are in harmony with those which fully appear in this opinion, it stated a cause of action, and was therefore not subject to the successful attack of a demurrer.

The judgment is therefore reversed, and the trial court is directed to overrule the demurrer to the cross-complaint of John C. Morin, and to grant all of the appellants a new trial.