BURNETT *v.* ROSE E. CAMDEN, ADMX. OF
ESTATE OF HARLEY CAMDEN.

[No. 369S40.  Filed January 13, 1970.  Rehearing denied February 26, 1970.]

Len E. Bunger, Jr., Austin V. Clifford, of Bloomington, for appellant.

Willis Hickam, Hickam & Hickam, of Spencer, for appellee.

HUNTER, C.J.—Appellant filed a petition to determine heirship in the Owen Circuit Court. The trial court sustained appellee's demurrer to each of the three paragraphs contained in the petition and rendered final judgment thereon in favor of appellee.

From the record before us the following facts appear. Appellant was born on December 4, 1916 an illegitimate child. Her mother, during pregnancy, instituted bastardy proceedings before the Justice of the Peace for Washington Township in Owen County against one Harley Camden, the purported father and the person to whose estate appellant seeks now to be designated an heir. That cause was dismissed in the circuit court upon the acceptance by appellant's mother of $200 which had been paid by the father of Harley Camden, Harley Camden not being found within the jurisdiction of the court. Appellant's mother and purported father never married and no other action was ever taken to legitimatize appellant.

The law governing inheritance rights of an illegitimate child is set forth at Ind. Ann. Stat. § 6-207 (1953 Repl.) and reads in pertinent part as follows:

> "Illegitimate children.— (a) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were the legitimate child of his mother, so that he and his issue shall inherit from his mother and from his maternal kindred, both descendants and collaterals, in all degrees, and they may inherit from him. Such child shall also be treated the same as if he were a legitimate child of his mother for the purpose of deter-

mining homestead rights, and the making of family allowances. (b) For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as if he were legitimate child of his father, if but only if, (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child and acknowledges the child to be his own . . ."

Thus to inherit from the putative father, paternity must be established by law *or* the putative father must marry the mother and acknowledge the child as his own.

Appellant, in the first two paragraphs of her petition, alleges that her paternity has been established by law and that she is therefore entitled to inherit under the statute. The first such paragraph relates the details pertaining to the bastardy proceeding instituted by appellant's mother and asserts that these proceedings established her paternity by law as required under the statute.

Although this court has never had occasion to interpret the statutory requirement that paternity be "established by law," the Appellate Court in *Thacker* v. *Butler* (1962), 134 Ind. App. 376, 184 N. E. 2d 894, held that the child's paternity must be determined in a judicial proceeding brought for that purpose in a court of law having jurisdiction to determine the issue. Although we agree that the statute contemplates a judicial proceeding, it would seem only reasonable to hold that the *nature* of the action is not controlling as long as the finding of paternity is necessary for the result reached and the quantum of proof establishing such paternity meets the standard set forth in the inheritance statute, to-wit: that the mother's testimony be corroborated by other evidence or circumstances.

We need not determine the efficacy of the bastardy proceeding in relation to § 6-207 in the instant case however, since that cause was dismissed before trial in the circuit court. The law is well settled that once a suit is voluntarily dismissed the situation is **just** as though the suit

had never been filed. *Bryan* v. *Smith* (7th Cir. 1949), 174 F. 2d 212. Also see numerous cases collected in annotation at 11 A. L. R. 2d 1407. As already noted the appellant's mother voluntarily dismissed the action in the bastardy proceeding upon the receipt of $200 on behalf of the putative father. Consequently those proceedings, under the above cited authority can certainly not be deemed to have established appellant's paternity by law, *there having been no proceeding* by virtue of the dismissal.

Appellant, in her second paragraph, asserts that the administrative proceedings upon which the certificate of birth was *issued* established by law her paternity. Appellant also points to the language of section two of Acts 1913, ch. 239, which states that a copy of the birth certificate when properly certified by the secretary of the Board of Health shall be *prima facie* evidence of the facts stated therein. Consequently it is argued that the introduction of a birth certificate should at least be sufficient against a demurrer. We would note the *issuance* of a birth certificate can hardly be classified as an *administrative proceeding* as contended by appellant. At best it constitutes a ministerial act by and on behalf of the State Board of Health. By no stretch of the imagination can such an act be considered *a judicial proceeding* establishing paternity under § 6-207. Since the mere issuance of the birth certificate is all that appellant relies on in the second paragraph, and since such issuance by no means constitutes a judicial proceeding as envisioned by § 6-207, we need not consider the legal efficacy of the birth certificate in determining paternity had there actually been a judicial proceeding in which appellant's paternity was at issue.

We next turn to the question of whether § 6-207 is unconstitutional as a deprivation of equal protection of the law, such issue being raised by the trial court's sustaining of appellee's demurrer to the third paragraph of appellant's petition to determine heirship. Appellant quite candidly states her position to be that the imposition on illegitimate children of the

additional requirements of proof of paternity during the lifetime of the father denies them equal protection. Much reliance is placed on two recent cases decided by the United States Supreme Court: *Levy* v. *State of Louisiana* (1968), 391 U. S. 68, 20 L. Ed. 2d 436 and *Glona* v. *American etc. Co.* (1968), 391 U. S. 73, 20 L. Ed. 2d 441. However the situations in both those cases are quite different than those presented here. *Levy* involved five illegitimate children who were attempting to sue for the wrongful death of their *mother*. The suit was dismissed on the grounds that the state statute (Louisiana) failed to authorize such actions in behalf of illegitimate children, the court holding that a denial of the right to recover, being "based on morals and general welfare, discourages bringing children into the world out of wedlock." 192 So. 2d 193, 195. The Supreme Court held that this constituted a denial of equal protection, legitimacy or illegitimacy of birth having no relation to the nature of the wrong allegedly inflicted against the mother.

The reverse situation was found in *Glona* where the mother brought an action for the wrongful death of her illegitimate son. The defendant was granted summary judgment on the grounds that the state statute (Louisiana again) did not authorize actions by mothers of illegitimate children. Again the Supreme Court held that this violated the constitutional mandate of equal protection of the laws where the withholding of relief appeared to be based solely on the fact that the child was born out of wedlock.

Two points should be noted. First of all, in neither case did there appear to be any question concerning the relationship between the mother and child or children. In *Levy* the court began by assuming maternity. Although *Glona* makes no specific mention of maternity, there appears to be no question in that regard. Secondly, the basis for the "discrimination" appears to be ultimately based on moral precept. "Sin," "morals," and "general welfare" are words to be found in the lower court opinions of both cases. To punish a child or

related person for the "wrong" of the biological parent on that basis alone by depriving him or his parent a cause of action accorded others is indeed an invidious discrimination and a denial of equal protection.

Looking to our situation, we note some obvious distinctions from the above cited cases. Paternity is not only uncertain, but the very issue in the case. Consequently, the question here is not, given an illegitimate child and his biological parent, has there been unreasonable discrimination. The very relationship itself is the only issue under the statute here being considered. This brings us to the second distinction, namely the legal *basis* for making a distinction between legitimates and illegitimates for inheritance purposes under the inheritance statute. For purposes of inheriting to, through, or from the mother, no conditions are stipulated. For purposes of inheriting to, through or from the father, one of two events must occur: (1) paternity must have been established by law during the lifetime of the father, or (2) the mother and putative father must have married and the father acknowledged the child as his own. The reasons for attaching these conditions to inheritance by an illegitimate from his father are obvious. Unless proof of paternity be required, fraudulent claims would abound. Being born illegitimate could mean a potential windfall of considerable magnitude to the unscrupulous imposter, were no proof of paternity to be required. As can readily be seen, the basis for distinguishing between legitimate and illegitimate children under § 6-207 is completely reasonable.

The test set out in *Levy* v. *Louisiana, supra,* is whether the line drawn is a rational one. We can conceive of few classifications whose bases would be more sound or rational. Certainly the reasons we give for drawing a distinction in our inheritance law are quite different than those given by the courts of Louisiana since here the only "discrimination" alleged involves various prerequisites to inheritance by an illegitimate child, the only purpose of which

is to prevent fraudulent claims on the estate of one deceased. Illegitimate children are given exactly the same rights of inheritance as legitimate children, *provided only* that paternity be established as required. Consequently, we hold that § 6-207 is not unconstitutional as a denial of equal protection. Sustaining of the demurrer to the third paragraph of appellant's petition by the trial court is therefore affirmed.

Having thus affirmed the trial court's action in sustaining appellee's demurrers to all three paragraphs of appellant's petition to determine heirship, we find no error in the trial court's having rendered final judgment thereon.

As a result of above determinations, we deem a discussion of appellee's assignment of cross-error unnecessary.

Judgment affirmed.

Arterburn and Givan, JJ., concur; DeBruler and Jackson, JJ., concur in result.

NOTE.—Reported in 254 N. E. 2d 199.

## ON PETITION FOR REHEARING

HUNTER, C.J.—Appellant raises two primary questions in her petition for rehearing concerning our decision in this case [see *Burnett* v. *Camden* (1969), 253 Ind. 354, 254 N. E. 2d 199] which we feel compelled to dispose of by way of written opinion.

Appellant first alleges that this court erred in its holding that the dismissal of the 1919 filiation proceeding before trial in the circuit court left the situation just as though the suit had never been filed. A distinction is drawn by appellant's argument between an ordinary suit in tort or contract and a statutory proceeding which, by the terms of the statute, gives a lasting effect to a dismissal. The statute referred to by appellant follows:

"Dismissal of suit.—The prosecuting witness, if an adult, may, at any time before final judgment, dismiss such suit, if she will first enter of record an admission that provision

for the maintenance of the child has been made to her satisfaction, and if such witness be a minor, she may dismiss such suit, if it be first shown to the satisfaction of the court, in which the same is pending, that suitable provision has been made and properly secured for the maintenance of the child, and a finding of the court to that effect entered of record; And such entry, in either case, shall be a bar to all other prosecutions for the same cause and purpose." 1875 (Spec. Sess.) ch. 4, § 1.

It is evident from a reading of the statute that it *does not* purport to govern the legal efficacy of a dismissal as appellant seems to contend. The statute *does* to some extent govern the rights of the parties pursuant thereto by stipulating that a dismissal will operate to bar a future suit provided there is an admission that provision for the maintenance of the child has been made. No further mention is made, however, in regard to the effect of a dismissal and we therefore hold that the general rules relating to dismissals as set out in our original opinion were properly applied. This being so, the dismissal operated to nullify all prior proceedings insofar as an adjudication on paternity is involved.

Notwithstanding this fact, appellant cites no authority for the proposition that an adjudication of paternity in the justice court in a bastardy proceeding under the then current Bastardy Act would be sufficient to "establish by law" the paternity of appellant as required by the inheritance statute (Ind. Ann. Stat. § 6-207 [1953 Repl.]). As we noted in our original opinion, the inheritance statute specifies the quantum of proof necessary, to-wit: the evidence of the mother and/or other corroborative evidence or circumstances. We note that the only evidence required under the Bastardy Act is that of the mother. 2 R. S. 1852, ch. 3, § 7. Included in the record of the instant case is a copy of the proceedings had in the justice of the peace court. The only evidence there taken was that of the mother and it appears from the record that such evidence was the sole basis for the justice's determination as to paternity. Obviously this would be insufficient under the standard of

proof laid down in the inheritance statute. Secondly, it would appear that the justice's determination was never intended to be conclusive as to a finding of paternity. The Bastardy Act expressly provided that upon a finding of paternity by the justice court, the justice was to transmit the papers and a transcript of such judgment to the clerk of the circuit court to be filed and docketed *for trial*. Were the adjudication of the justice intended to be a binding determination on the question of paternity, there would be little need for a *trial* in the circuit court. It is our conclusion therefore that the justice's decision would not be a competent adjudication irrespective of the proceedings that followed.

The second point raised by appellant's petition for rehearing is that this court erred in holding that Ind. Ann. Stat. § 6-207 (1953 Repl.) does not violate appellant's constitutional right to equal protection of the laws. Appellant here reiterates her argument that the inheritance statute arbitrarily disinherits illegitimate children by requiring proof of heirship. The implication appears to be that such a requirement evidences an "irrational prejudice" against innocent children for the wrongdoing of their parents. As this court attempted to make manifestly clear in the majority opinion however, the distinction drawn between legitimate and illegitimate children for purposes of inheritance under the intestate succession laws is to prevent the successful maintenance of fraudulent claims. Illegitimate children are not denied those rights accorded the legitimate; rather the right is reasonably conditioned on a substantiation of the claim of paternity.

Appellant here argues that the danger of fraudulent claims abounds in all types of litigation and is not reason enough to impose the additional requirement of proof of paternity on the illegitimate. However in a situation such as that before us the one, if not the only, person who could effectively rebut a claim of paternity is *deceased*. Appellant's rights as an illegitimate child are not the only matters of concern for this court. Thus to require certain acts to have been performed or compli-

ance with a certain standard of proof in establishing paternity is entirely reasonable. The statutory prerequisites to inheritance by intestate succession is a proper and constitutional effectuation of a legitimate state objective.

For the foregoing reasons, appellant's petition for rehearing is denied.

Petition denied.

Arterburn and Givan, JJ., Concur. DeBruler and Jackson, JJ., Concur in Result.

NOTE.—Reported in 255 N. E. 2d 650.