**Evelyn GOINS, Mother of Eric Duane Goins, a Minor, Plaintiff-Appellant,**

v.

**Joyce Ann LOTT, Mother of Craig Ezell Lott, a Minor, Plaintiff-Appellee,**

**and**

**Youngstown Sheet & Tube Company, Defendant-Appellee.**

**No. 2–681A189.**

Court of Appeals of Indiana, Fourth District.

May 26, 1982.

Harry A. Psimos, Merrillville, for plaintiff-appellant.

Jill L. Olson, Theodoros, Anderson & Tauber, P. C., Merrillville, for defendant-appellee.

MILLER, Presiding Judge.

This appeal addresses the question of whether an acknowledged illegitimate child, whose paternity was never established by court action, is entitled to dependency benefits under the Workmen's Compensation Act (Act). Evelyn Goins, the mother of Eric Duane Goins, (the legitimate child) and Joyce Ann Lott, the mother of Craig Ezell Lott, (the acknowledged illegitimate child) both filed claims on behalf of their minor children for dependency benefits under the Workmen's Compensation Act, Ind.Code 22–3–1–1 *et seq.*, after an industrial accident resulted in the death of Ezell Goins. Eric was born during the marriage of Evelyn and Ezell Goins. Craig was Joyce's illegitimate child and was allegedly acknowledged by Ezell as his biological son. The Industrial Board of Indiana awarded benefits to both children under the presumptive dependency statute of the Workmen's Compensation Act. Evelyn appeals the Board's decision alleging it was without authority to award Craig benefits as an acknowledged illegitimate child in the absence of a judgment of paternity from the appropriate court. We affirm.

## FACTS

On December 28, 1979 Ezell Goins died as a result of an industrial accident while employed by Youngstown Sheet and Tube Company.[1] Shortly thereafter both Evelyn and Joyce filed applications for dependency benefits under the Workmen's Compensation Act, IC 22–3–3–19. Evelyn Goins alleged that her son, Eric, was the sole dependent of the decedent.

A hearing was held before a member of the Industrial Board on June 17, 1980. On December 19, 1980, at the conclusion of the hearing, the hearing member entered the following findings which were affirmed and adopted by a majority of the Full Industrial Board on May 5, 1981:

## "FINDINGS

Said Hearing Member, having heard all the evidence in said cause, the stipulation

---

1. The parties stipulated;

 "[O]n December 28, 1979, Decedent, Ezell Goins was employed by Defendant [Youngstown Sheet and Tube Company] at an average weekly wage in excess of One Hundred Ninety-Five Dollars ($195.00), and on said date sustained accidental injuries arising out of and in the course of his employment, which resulted in his death on said date; that Defendant had knowledge of the fatal injuries and furnished all medical, surgical, hospital, nursing care, services and supplies necessitated thereby; that Defendant paid the statutory burial allowance of Fifteen Hundred Dollars ($1,500.00) as a result of Decedent's [sic] death."

of the parties, and having reviewed the entire file and being duly advised in the premises therein, now adopts the stipulation as the Board's findings.[2]

It is further found that ERIC DUANE GOINS is the legitimate child of decedent, EZELL GOINS, and he meets all the requirements of I.C. 22-3-3-19(d), of the Compensation Act for classification as a presumptive dependent.

It is further found that CRAIG EZELL LOTT is the illegitimate child of the decedent, EZELL GOINS; that EZELL GOINS acknowledged that CRAIG EZELL LOTT was his illegitimate child during his lifetime; and further acknowledged that CRAIG EZELL LOTT was his son on the beneficiary form for the decedent's life insurance policy with the Defendant; that as an acknowledged illegitimate child, CRAIG EZELL LOTT meets all of the requirements of I.C. 22-3-3-19(d), of the Compensation Act for classification as a presumptive dependent.

It is further found that ERIC DUANE GOINS and CRAIG EZELL LOTT are the sole dependents of the decedent, EZELL GOINS, and that the statutory compensation in the amount of Sixty-Five Thousand Dollars ($65,000.00) shall be paid in equal shares to the respective mothers as natural guardians without the intervention of the appointment of a legal guardian or trustee so long as said minor children remain dependents as contemplated by the Workmen's Compensation Act of the State of Indiana.

It is further found that the undersigned Hearing Member now finds for both Plaintiffs and against the Defendant on Plaintiffs' Application No. 10 for the adjustment of claim for compensation."

Evelyn thereafter initiated this appeal.

The evidence most favorable to the Board's decision is as follows. Evelyn and Ezell Goins were married on September 8, 1972, and divorced on August 19, 1975. Eric was born to the parties on December 5, 1972, during their marriage. Custody of the child upon divorce was awarded to Evelyn and Ezell was ordered to pay child support.

Joyce Lott met the decedent, Ezell, in February of 1975. Approximately three weeks after their initial meeting the parties began engaging in sexual intercourse averaging two or three times a week during the period of February through November of 1975.[3] Joyce did not have intercourse with any other person during that period of time. In approximately June of 1975 Joyce became pregnant and that child, Craig, was born on February 26, 1976. Craig lived with his mother Joyce at all times. Joyce testified that the father of that child was Ezell. She also testified that Ezell regularly provided support for Craig in the form of food, clothing, toys and money from the period of March 1977 to December 1979, the date of Ezell's death, although the parties stopped dating sometime in 1977. Specifically Ezell paid her $25 to $50 every two weeks from March of 1977 until his death in December of 1979. She also testified that Ezell visited Craig, took him places and bought him presents two or three times a month until Ezell died. Throughout this period Joyce was receiving ADC payments and advised the welfare department that Ezell was the father of her child although she denied that she had received any support from Ezell.

Joyce's testimony was substantially corroborated by several witnesses. Castella Edwards, the first cousin of the decedent, testified Ezell told her Joyce was pregnant with his child and later introduced Craig to her as his son. She also testified that about once a month until his death Ezell left money with her for her to give to Joyce and specified it was for Craig. She recalled Ezell would buy presents for Craig on traditional occasions such as Christmas and his birthday.

---

2. The stipulation is contained in footnote one, *supra.*

3. In November of 1975, before Craig's birth, Joyce temporarily moved to Rockford, Illinois. She returned in July of 1976; she maintained contact with Ezell during her absence.

Julia Ricks, Ezell's finance at the time of his death, also testified that Ezell repeatedly acknowledged Craig was his son beginning in April of 1977. Julia testified that approximately once or twice each month Ezell would bring Craig to stay with Julia and Ezell for the weekend at their home. Julia also indicated that according to Ezell he paid approximately $50 to $100 for Craig's care once or twice a month up to and including the month of his death. Julia would occasionally take Craig shopping with money given to her by Ezell for that purpose.

The Supervisor of Workmen's Compensation at Ezell's place of employment stated that according to his records Ezell's insurance policy designated two beneficiaries, Eric Goins and "Craig Goins," [4] which Ezell therein characterized as his "sons."

## DECISION

■ At the outset we note that, in addition to the very substantial evidence of Ezell's acknowledgement of Craig as his son, the record also reveals sufficient evidence to support factual (biological) paternity. In Indiana an act of sexual intercourse between the defendant and the mother coupled with a probability of conception at that time is sufficient to support a determination of paternity. For example in *D.M. v. C.H.*, (1978) Ind.App., 380 N.E.2d 1269 the evidence revealed the child was born on September 1, 1969 and that the mother had regular sexual intercourse with the putative father in October, November and December of 1968 and January and February of 1969. Such evidence was held sufficient to support a determination of paternity. *See also Roe v. Doe*, (1972) 154 Ind.App. 203, 289 N.E.2d 528. In the instant case the evidence is uncontradicted that Joyce had sexual ·intercourse solely with Ezell during the pertinent period. Although Evelyn's recitation of the facts in her brief focus on minimally conflicting evidence, it is well settled that on review we

cannot weigh the evidence or determine the credibility of witnesses but will only consider that evidence which supports the decision of the Board. *Martinez v. Taylor Forge & Pipe Works*, (1977) 174 Ind.App. 514, 368 N.E.2d 1176; *Hilltop Concrete Corp. v. Roach*, (1977) 174 Ind.App. 100, 366 N.E.2d 218. Applying this standard of review to the evidence in this case, we must conclude the finding that Craig was Ezell's biological and acknowledged son is not reasonably open to question, assuming the Board was empowered to so find without a prior judgment of paternity.

On appeal, Evelyn's entire argument is designed solely to question the authority of the Industrial Board of Indiana under the Workmen's Compensation Act to determine whether a child is an acknowledged illegitimate and thereby entitled to benefits. Specifically, the Industrial Board's award determined that Craig Ezell Lott was a presumptive dependent under IC 22–3–3–19 which provides as follows:

"The following persons are conclusively presumed to be wholly dependent for support upon a deceased employee and shall constitute the class known as presumptive dependents in section 18 of this chapter:

(a) A wife upon a husband with whom she is living at the time of his· death, or upon whom· the laws of the state impose the obligation of her support at such time. The term 'wife' as used in this subsection shall exclude a common law wife unless such common law relationship was entered into before January 1, 1958, and in addition thereto, shall have existed openly and notoriously for a period of not less than five (5) years immediately preceding the death.

(b) A husband who is both physically and financially incapable of self-support, upon his wife with whom he is living at the time of her death. The term 'husband' as used in this subsection shall exclude a common law husband unless such

4. However, only Eric was therein listed as a "dependent" and unmarried child under 19 years of age. At the time of the hearing, insur-

ance benefits had been paid to Craig Lott, as well as to Eric.

common law relationship was entered into before January 1, 1958, and in addition thereto, shall have existed openly and notoriously for a period of not less than five (5) years immediately preceding the death.

(c) An unmarried child under the age of eighteen (18) years upon the parent with whom he or she is living at the time of the death of such parent.

(d) *An unmarried child under eighteen (18) years upon the parent with whom he or she may not be living at the time of the death of such parent, but upon whom, at such time, the laws of the state impose the obligation to support such child.*

(e) A child over the age of eighteen (18) years who has never been married and who is either physically or mentally incapacitated from earning his or her own support, upon a parent upon whom the laws of the state impose the obligation of the support of such unmarried child.

(f) A child over the age of eighteen (18) years who has never been married and who at the time of the death of the parent is keeping house for and living with such parent and is not otherwise gainfully employed.

As used in subsections (c), (d), (e) and (f) of this section, the term *'child' shall include stepchildren, legally adopted children, posthumous children and acknowledged illegitimate children.* The term 'parent' shall include stepparents and parents by adoption.

The dependency of a child under subsections (c) and (d) of this section shall terminate when such child attains the age of eighteen (18)." (Emphasis added.)

This section lists those persons who are "conclusively presumed to be wholly dependent" and entitled to compensation to the complete exclusion of all other dependents. IC 22–3–3–19. The Board specifically found Craig was a "child" under the above emphasized subsection (d) of IC 22–3–3–19, (hereinafter referred to as Subsection (d)) i.e. Ezell's acknowledged illegitimate child whom Ezell was obligated to support.

This subsection, like all other provisions of the Act, must be construed liberally in order to accomplish its beneficent purposes. *Frampton v. Central Indiana Gas Co.*, (1973) 260 Ind. 249, 297 N.E.2d 425; *Welch v. Welch Aircraft Industries, Inc.*, (1940) 108 Ind.App. 545, 29 N.E.2d 323. Further the Act seeks to shift economic loss caused by injury to an employee arising out of and in the course of his employment to the industry involved. As explained in *Guevara v. Inland Steel Co.*, (1949) 120 Ind. App. 47, 53, 88 N.E.2d 398, 401 *quoting Homan v. Belleville Lumber & Supply Co.*, (1937) 104 Ind.App. 96, 108, 8 N.E.2d 127, 132:

> "We believe that it should be the concern of the court to interpret the act in such manner as to help the legislature accomplish the end that it intended and that the act should be used as a starting point from which judicial reasoning should begin with a view to the correction of the evils and an accomplishment of the ends sought."

Both parties acknowledge Subsection (d) should be construed as entitling Craig to an award of benefits only if Ezell "acknowledged" Craig as his natural son *and* if, at the time of Ezell's death, he was obligated under Indiana law to support Craig. By virtue of these requirements, both parties also recognize the need for a determination of paternity. Evelyn contends, however, the Industrial Board was usurping the power of the judiciary by making this determination in the absence of judicial decree establishing that relationship pursuant to paternity proceedings brought specifically for that purpose.

Specifically, Evelyn argues the paternity statutes Ind.Code 31–6–6.1–1 *et seq.*, provide "the *exclusive* remedy for illegitimates and sets out the procedure whereby paternity can be established in a court of competent jurisdiction." (Emphasis added.) Since such jurisdiction is vested in the appropriate circuit, juvenile, or superior courts, Evelyn concludes the Industrial Board cannot determine factual paternity even solely for benefit purposes.

A virtually identical argument was presented in *Copple v. Bowlin*, (1961) 172 Neb. 467, 110 N.W.2d 117 where the evidence was found sufficient to sustain an award to an illegitimate child (the product of an invalid marriage), based on a determination of paternity. The Supreme Court of Nebraska held that such a determination by the body charged with administration of the Workmen's Compensation Act was justified when necessary to a determination of dependency for benefit purposes:

"It is contended that the workmen's compensation court is without jurisdiction to determine the paternity of children and, consequently, it cannot be determined in a workmen's compensation case. The Workmen's Compensation Act requires the workmen's compensation court to determine questions of dependency and relationship and to make orders for the benefit of wives, husbands, children, adopted children, stepchildren, and posthumous children. *Where a determination of paternity is a necessary incident to such determinations the workmen's compensation court has the power and authority to make such a determination.* If this were not so, the powers specifically granted to the workmen's compensation court as a court of original jurisdiction in matters arising under the Workmen's Compensation Act would be unduly circumscribed and in many cases would prevent the determination of issues specifically within its original jurisdiction." (Citations omitted.) (Emphasis added.) *Id.* at 475, 110 N.W.2d at 123.

■ Our Act, as does the Workmen's Compensation Act in Nebraska, authorizes the Board "to hear, determine and review all claims for compensation under [the Indiana Workmen's Compensation Act.]" IC 22–3–1–3. IC 22–3–1–2 additionally provides that the "industrial board shall have immediate charge of administration of the provisions of the Workmen's Compensation Act and such other duties as are hereinafter prescribed." The Industrial Board is also expressly authorized to make conclusions of facts and rulings of law, IC 22–3–1–3, necessary to effectuate the provisions of the

Act. We feel it is axiomatic that where a factual determination of a child's paternity is "a necessary incident," *Copple v. Bowlin, supra,* to a determination of dependency for benefit purposes under the Act, the Industrial Board is empowered to decide that question pursuant to the discharge of its administrative duties.

■ In a related argument, Evelyn contends under Subsection (d) Craig has failed to show "the laws of the state impose an obligation" upon Ezell to support him since only a paternity action could establish such an obligation. We disagree. We conclude from an examination of our statutes, case law and modern authority that the *fact* of paternity gives rise under Indiana law to the duty of a father to support his illegitimate child; the paternity statutes simply provide a mechanism for judicial recognition and *enforcement* of this obligation.

The very existence of the paternity statute evidences society's and the legislature's recognition of a parent's obligation to support illegitimate children:

"At common law a bastard is said to be filius nullius, the child of nobody, or filius populi, the child of the people. Under the common-law theory an illegitimate child had no father known to the law, and indeed not even a mother. Illegitimacy was considered disgraceful, and a bastard was disqualified from certain offices. Rights of inheritance by, from, and through a bastard were severely restricted.

In most, if not all, of the states, statutes have mitigated more or less the rigors of the common law and conferred upon illegitimate children rights which that law denied. While these statutes differ widely as to the status and rights of illegitimates, the general tendency seems to be one of increasing liberality." (Footnotes omitted.)

10 Am.Jur.2d *Bastards* § 8 at 848–49 (1963). In the not too distant past, courts reviewing worker compensation cases generally denied benefits to illegitimate children in the absence of statutes expressly including them.

In recent years, however, these same courts have systematically overruled their earlier holdings, thereby including illegitimates in the definition of "child" for benefit purposes, even in the absence of statutory amendments. *E.g., Larson v. Wisconsin Dep't of Industry, Labor & Human Relations,* (1977) 76 Wis.2d 595, 252 N.W.2d 33, *overruling, Kuetbach v. Industrial Commission,* (1917) 166 Wis. 378, 165 N.W. 302. The sole basis for this judicial expansion has been the recognition of an illegitimate's changing status in society and under law. Judicial expansion is not necessary in Indiana since our Legislature, in the section of the statute under consideration (IC 22–3–3–19), has expressly defined "child" as including acknowledged illegitimates.

The law in Indiana therefore reflects this general tendency to recognize natural rights and obligations between a parent and his illegitimate child. A section of our paternity statute, Ind.Code 31–6–6.1–13 for example, authorizes orders· to putative fathers not only for support but for a variety of expenses including medical, hospital, dental, education, funeral, and the like. This duty to support an illegitimate child does not automatically cease until the happening of certain events such as the child's 21st birthday or emancipation. The predecessor statute, in effect at the time of Craig's birth, Ind.Code 31–4–1–2 repealed by Acts 1978 P.L. 136 Sec. 57 provided: "Obligation of parents. The parents of a child born out of wedlock and not legitimated . . . owe the child necessary maintenance, medical care, education and support, and are liable for the child's funeral expenses. The obligations imposed upon parents to support their legitimate children are hereby imposed upon the parents of children born out of wedlock." Although this express language may have been repealed it is apparent the manifest purpose of our paternity statutes is to recognize the natural obligation of a father for his illegitimate child. Since the legislature has already imposed and recognized this obligation, it was unnecessary to repeat this generally accepted policy.

Indeed the United States Supreme Court has held that once a state posits a judicially enforceable right on behalf of children to needed support from their natural fathers, there is no constitutionally sufficient justification for denying such a central right to an illegitimate child. *Gomez v. Perez,* (1973) 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56; *Weber v. Aetna Casualty & Surety Co.,* (1972) 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (illegitimate children may not be excluded from sharing workmen's compensation benefits with other children.) In Indiana the father of a legitimate child has both a common law and statutory duty of support. *Crowe v. Crowe,* (1965) 247 Ind. 51, 211 N.E.2d 164. As explained in *Crowe,* "[a] court order requiring [payment of support] does nothing more than carry out the common law principle involved. . . ." *Id.* at 54, 211 N.E.2d at 166. Even bankruptcy does not relieve a father of the obligation to make support payments for his children; nor does the liability to support legally cease where a divorce decree is silent on the issue. *Id.* The Indiana statutes cited above similarly recognize and impose the obligation of an illegitimate child's support on the child's father. That obligation arises, under the law of this state, by virtue of the father-child relationship, and is not dependent upon the child's social or legal status. *E.g., Denning v. Star Publishing Co.,* (1932) 94 Ind.App. 300, 180 N.E. 685 (Recognized as a principle of natural law). A court order under our paternity statutes providing for support is merely the mechanism for enforcing that obligation. *See, Crowe v. Crowe, supra.*

∎∎∎∎ The Industrial Board was not precluded from awarding dependency benefits to Craig although no prior judicial proceedings had required support payments from Ezell for Craig. That provision of the Act under construction here, Subsection (d), only requires a *factual* determination of paternity and acknowledgement.[5] It is evi-

---

5. "Acknowledgement" has no fixed legal definition, *Townsend v. Meneley,* (1905) 37 Ind.App.

127, 74 N.E. 274, but means in the ordinary sense, "to own or admit the knowledge of; to

dent these combined requirements are not the equivalent of the necessary elements in paternity actions, since paternity may be established through other mechanisms.[6]

We therefore hold no prior or concomitant paternity proceedings are necessary for an award of benefits under the Act. Although the precise question has not been previously addressed in Indiana, a recent Indiana Supreme Court case implicitly adopted a similar holding. In *Bernacki v. Superior Construction Co.*, (1979) Ind., 388 N.E.2d 536, our Supreme Court upheld the Industrial Board's decision denying compensation to a posthumous unacknowledged illegitimate child. In that case the child was conceived shortly before the worker's death. Indeed there was no indication that the decedent ever knew the mother was pregnant and therefore had no opportunity to acknowledge the child as his own. The Industrial Board specifically found, however, that the deceased worker was the father of the child claimant but denied benefits because the child was not acknowledged by him. Responding to an equal protection challenge the majority opinion, in vacating the earlier Court of Appeals decision, quoted with approval language from Chief Judge Buchanan's dissenting opinion: "Requiring acknowledgement decreases the problem of locating illegitimate children and *determining questionable claims of parenthood.*" (Emphasis added.) *Id.* at 539. Obviously the problem of determining paternity would not have been of any concern if a prior judicial determination of paternity had been required under the statute.[7] From the facts in *Bernacki* it is evident the Court was concerned with factual paternity, not a judicial determination pursuant to IC 31–6–6.1–1, *et seq.*[8]

Other jurisdictions with virtually identical provisions have reached similar holdings. In *Inventory Service Corp. v. Industrial Commission*, (1975) 62 Ill.2d 34, 338 N.E.2d 377, the Supreme Court of Illinois held that in order to award death benefits to a minor child under the Workmen's Compensation Act it must be established that a *legally enforceable basis* for the dependency existed at the time of the employee's accident.[9] The Illinois Workmen's Compensation Act awarded benefits to the child of a deceased worker who was "under a legal obligation

---

recognize as a fact or truth...." *Id.* at 131–32, 74 N.E. at 275; *accord, Hooley v. Hooley*, (1967) 141 Ind.App. 101, 226 N.E.2d 344. *See, Haskett v. Haskett*, (1975) 164 Ind.App. 105, 327 N.E.2d 612.

6. In order to establish paternity in a proceeding brought specifically for that purpose, a mother need not show the putative father acknowledged the illegitimate child. Evelyn's argument that the Workmen's Compensation statute under construction here is analogous to the Act delineating an illegitimate's right under the descent and distribution statutes is unpersuasive. Under Ind.Code 29–1–2–7(b) an illegitimate may share in the estate *"if but only if (1) the paternity of such child has been established by law, during the father's lifetime*; or, (2) if the putative father marries the mother of the child and acknowledges the child to be his own...." (Emphasis added.) The Workmen's Compensation Act does not contain a similar provision. Had the legislature meant to exclude all acknowledged illegitimate children except those who had their paternity judicially established it could have easily indicated such an intention in a similar fashion. Further, the version of the Act under consideration here makes no reference to the descent and distribution statutes.

7. In summarizing the effect of the majority opinion, Justice DeBruler in his dissenting opinion stated: "According to the interpretation given these statutory provisions by the Board, she could qualify as an 'acknowledged illegitimate' child only upon proof of two elements: paternity and acknowledgement. If a child seeking benefits through this category proved only acknowledgement he would not qualify. If a child proved only paternity he would not qualify. In this case, Rhonda successfully made it over the paternity hurdle but was unable to surmount the acknowledgement hurdle." *Bernacki v. Superior Construction Co., supra* at 540 (DeBruler, J. dissenting).

8. A similar premise was implicit in *Hooley v. Hooley*, (1967) 141 Ind.App. 101, 226 N.E.2d 344. However, in *Hooley* the Industrial Board found the child had not been acknowledged and therefore denied benefits. This determination was upheld on appeal based on conflicting inferences from the evidence presented below.

9. The statute required payment of benefits to a widow or child "whom [the decedent] was under legal obligation to support at the time of his accident...." Ill.Rev.Stat.1967, ch. 48, par. 138.7(a).

of support." In that case, however, the legal obligation of the natural father to support his minor daughter did not exist since the daughter had been adopted by a stepfather. The adoption decree expressly freed the natural father of all obligations whatsoever for his natural child.

The same provision of the Illinois Workmen's Compensation Act was construed in *Yellow Cab Co. v. Industrial Commission,* (1969) 42 Ill.2d 226, 247 N.E.2d 601 where it was contended illegitimate children were not entitled to benefits in view of the common law rule disavowing any legal obligation for the support of an illegitimate child. The Illinois Supreme Court held: "the underlying social attitudes which produced these doctrines have yielded to more enlightened judicial and legislative action," *id.* at 230, 247 N.E.2d at 603; the rationale underlying older cases which denied children Workmen's Compensation benefits were no longer applicable under the modern view. The Court also observed that not every minor illegitimate child would qualify under the provisions since factual paternity must be proven. However, the facts in *Yellow Cab* clearly indicated paternity and therefore the decedent was under a legal obligation to support the child. *See also Copple v. Bowlin, supra,* (where the Supreme Court of Nebraska upheld the award of benefits to an illegitimate child based upon a finding of paternity under the paternity statute standards although no paternity proceeding had ever been instituted); *Hewett v. Garrett,* (1968) 274 N.C. 356, 163 S.E.2d 372.

Finally Evelyn argues the language of Subsection (d)—"the laws of the state impose the obligation to support"—require that at the time of Ezell's accidental death, the obligation must have been a legally enforceable one. She claims Ezell's obligation to support could not have been established at the time of his death because no action had been brought to establish paternity within two years of Craig's birth and therefore such an action was barred by the statute of limitations, Ind.Code 31-6-6.1-6. There is merit to her argument.

However, assuming *arguendo* the applicability of the statute of limitations in the instant case, *at the time of Ezell's accidental death* (the pertinent time pursuant to IC 22-3-3-19(b)) a paternity action was not barred. IC 31-6-6.1-6 provides that an action for paternity must be filed within two years after the child is born unless "the alleged father has substantially fulfilled his obligation as a parent during the period between the child's conception and the date of filing." In the instant case Ezell provided substantial economic and emotional support for Craig. A legally enforceable basis for support therefore existed at the time Ezell died, assuming such an enforceable obligation must exist. This statute of limitations, however, is only an affirmative defense to paternity proceedings. We do not find it necessary to determine whether this affirmative defense negates the obligation to support or only renders it unenforceable in paternity proceedings.

Our decision affirming the award of benefits to an acknowledged illegitimate child under Subsection (d) even in the absence of any prior judicial proceedings brought to enforce a putative father's obligation of support clearly comports with the purposes of the Act. The Act transfers from the worker to the industry in which he is employed, and ultimately to the consuming public, the greater portion of economic loss due to an industrial accident. *Mann v. Schnarr,* (1950) 228 Ind. 654, 95 N.E.2d 138. Underlying the Act is the principle that the economic loss arising out of the course of employment and from which a worker dies ought to be borne by the industry involved and the consumers of its products, rather than by the employee's dependents or society at large. *Guevara v. Inland Steel Co., supra.* Denying workmen's compensation to Craig, an illegitimate child acknowledged and supported by Ezell as his natural son, would shift Ezell's *acknowledged economic responsibility* to Joyce and Craig, and perhaps society at large in the form of welfare payments, rather than to the industry which employed Ezell. Such a result would manifestly contravene the purposes of the Act.

The Board's decision awarding Craig benefits as a presumptive dependent is affirmed.

BUCHANAN, C. J. (sitting by designation), and CONOVER, J., concur.