**FIRST STUDENT, INC. and Sharon Byrd, Appellants–Defendants,**

v.

**ESTATE OF Matthew Scott MEECE, by Le Ann Pearl as personal Representative, Appellee–Plaintiff.**

No. 49A02–0507–CV–644.

Court of Appeals of Indiana.

June 20, 2006.

Nicholas C. Pappas, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellants.

David W. Craig, Scott A. Faultless, Craig Kelley & Faultless, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellants–Defendants, First Student, Inc. and Sharon Byrd, challenge the trial court's denial of their motion for partial summary judgment in the wrongful death claim filed against them by Le Ann Pearl as the personal representative of the Estate of Matthew Scott Meece ("the Estate").

We affirm.

The facts most favorable to the Estate, as the non-moving party, reveal that on October 22, 2003, Matthew Scott Meece was struck and killed by a bus driven by Byrd as an employee of First Student, Inc. Meece had been living with Le Ann Pearl with whom he had a one-year-old daughter, K.M. At the time of Meece's death, Pearl was pregnant with another daughter, M.P. Genetic testing has since proved that M.P. is Meece's child. Meece was working at the time of his death, giving rise to a claim for worker's compensation benefits.

On December 8, 2003, Pearl filed an action in the Decatur Circuit Court titled "Verified Petition for Appointment of Guardian and Authorization to Compromise and Settle Minors' Claims." App. at 32. The petition was captioned, "In the Matter of the Compromise and Settlement of Minors' Claims of [K.M.] and Unborn Child." *Id.* In that petition, Pearl indicated that Meece's employer had offered to settle the worker's compensation claim for $100,000, representing "the maximum amount allowable under Indiana law for the death of an employee in the scope of his employment." App. at 33. The petition further requested that a guardianship be established for purposes of approving the worker's compensation settlement on behalf of Meece's daughter and then-unborn child and that Pearl be named as guardian.[1] The proposed settlement would have split the worker's compensa-

---

1. The petition indicated that Pearl was already the "parent and natural guardian" of K.M. App. at 34.

tion as follows: $45,000 to buy an annuity for the benefit of K.M.; $45,000 to buy an annuity for the benefit of the then-unborn child if the child were born alive, but if not, that sum would be spent to purchase another annuity for the benefit of K.M.; and $10,000 to be paid immediately to Pearl to use for living expenses for her and the child.[2]

On December 10, 2003, the Decatur Circuit Court issued an order appointing Pearl as guardian for purposes of the worker's compensation settlement and provided that the benefits be distributed as sought in the petition. The court further ordered, "If the child is born, Le Ann Pearl shall return to this Court, establish paternity of the unborn child and, if paternity is successfully established, seek permission to buy an annuity for the benefit of the unborn child." App. at 45A. Thus, paternity of the unborn child had to be established before the court would authorize the purchase of the annuity.

On November 7, 2003, an estate was opened for the purpose of seeking damages for wrongful death from the defendants. On January 14, 2004, Pearl filed another petition in the Decatur Circuit Court seeking permission to purchase an annuity for the benefit of the then-unborn child before her birth in order to avoid detrimental income tax consequences. This petition also requested that the annuity for the unborn child should "provide that in the event that the unborn child is not born, or in the event that the paternity of the unborn child does not establish that it is the child of Matthew Meece, the annuity shall be payable to [K.M.] as a contingent beneficiary." App. at 48. The petition requested that the annuity should be delivered to the Decatur Circuit Court and

remain there until July 1, 2004, "at which time, the mother, Le Ann Pearl shall report to this Court as to the status and paternity of the unborn child." *Id.* The Decatur Circuit Court issued an order on the petition that same day, which granted the requests mentioned above, including that Pearl report back to the court on July 14, 2004 as to the status and paternity of the child.

On January 23, 2004, the Estate initiated the present action in the Marion Superior Court, seeking recovery for wrongful death from the Defendants. An amended complaint was filed on February 27, 2004. On May 10, 2004, Pearl gave birth to the child, M.P. On October 15, 2004, Pearl gave a deposition in which she was asked, "if a proceeding was filed in court to establish paternity [of M.P.]?" Pearl answered, "No." App. at 29. Pearl's attorney explained that "Social Security recognizes it," apparently referring to Meece's paternity of M.P., but explained that other than the Social Security recognition, there had not been a proceeding to establish paternity, but that "there is going to be shortly." *Id.* at 30. Soon thereafter, on October 21, 2004, Pearl returned to the Decatur Circuit Court and filed a document titled, "Petition to Establish Paternity of Unborn Child, Establish Ownership of Annuity, and for Amendment of Caption." *Id.* at 37. The petition stated in relevant part:

"4. The unborn child was born on May 10, 2004, and given the name [M.P.].

5. After the birth of the unborn child, Le Ann Pearl undertook to obtain blood tests necessary to establish [that] Matthew Meece was the father of

---

2. The petition alleged that Pearl was unemployed and that Meece had been the income earner for the household.

[M.P.]. Such tests were completed, which tests demonstrate that Matthew Meece is the father of [M.P.]. Copies of the blood test documents are attached hereto and incorporated herein as Exhibit 'A'.

6. Now that the blood tests have demonstrated the paternity of [M.P.], the caption of this action should be amended to reflect as much. Such caption should now read 'In the Matter of the Paternity of [M.P.] and the Compromise and Settlement of Minors' Claims of [K.M.] and [M.P.].'

7. The annuity previously issued in the name of an unborn child should be changed to reflect that the proper annuitant is [M.P.]." *Id.* at 38.

The petition was granted that day.

On March 28, 2005, the Defendants filed a motion for partial summary judgment, claiming that M.P. did not qualify as a "dependent child" under the wrongful death statutes because, according to the Defendants, Pearl did not file a "paternity petition" in the Decatur Circuit Court until nearly twelve months after Meece's death, whereas Indiana law required that such a petition be filed within eleven months after Meece's death. The Defendants did not challenge K.M.'s status as a wrongful death beneficiary.[3] The Estate filed a responsive brief on June 8, 2005. The trial court held a summary judgment hearing on June 20, 2005. The following day, the trial court entered an order denying the Defendants' motion for partial summary judgment. The Defendants filed a notice of appeal on July 18, 2005.

██ Summary judgment is appropriate only where the designated evidentiary materials demonstrate that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Rector v. Oliver,* 809 N.E.2d 887, 889 (Ind.Ct.App. 2004) (citing Ind. Trial Rule 56(C)), *trans. denied.* When reviewing a grant of a motion for summary judgment, we stand in the shoes of the trial court. *Id.* Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the burden falls upon the non-moving party to come forward with contrary evidence. *Id.* Upon appeal, we do not weigh the evidence but rather consider the facts in the light most favorable to the non-moving party. *Id.*

The parties appear to agree as to the relevant facts. The resolution of the present case therefore depends more upon the application of the law to those facts. Here, the legal question involves the interaction of several different sections of the Indiana Code: the worker's compensation statutes, the wrongful death statutes, the intestacy statutes, and the paternity statutes.

Although not directly at issue in the present case, a discussion of the worker's compensation statutes is necessary to the resolution of this case. Pursuant to Indiana Code § 22–3–3–19 (Burns Code Ed. Repl.1997), certain persons are presumed to be wholly dependent for support upon a deceased employee for purposes of worker's compensation benefits. Included among these presumptive dependents are "acknowledged children born out of wedlock." *Id.* Such presumptive dependents are entitled to compensation "to the complete exclusion of total dependents in fact and partial dependents in fact and shall be entitled to such compensation in equal

---

**3.** Meece apparently executed a paternity affidavit regarding K.M. *See* Ind.Code § 31–14–2–1 (Burns Code Ed. Repl.2003).

shares." Ind.Code § 22–3–3–18 (Burns Code Ed. Repl.1997). When the Decatur Circuit Court's order in the minor's compromise action required that Meece's paternity of M.P. be established, the obvious purpose of this was to establish that M.P. was Meece's child for purposes of the worker's compensation statutes, thereby allowing M.P. to receive the worker's compensation benefits.

Under Indiana's wrongful death statutes, when the death of an individual is caused by the wrongful act or omission of another, the decedent's personal representative may maintain an action on behalf of the decedent against whomever caused the death, if the decedent, had he or she lived, might have maintained an action for an injury for the same act or omission. Ind. Code § 34–23–1–1 (Burns Code Ed. Repl. 1998). That part of the damages which is recovered for medical, hospital, funeral, and burial expenses inures to the exclusive benefit of the decedent's estate. *Id.* The remainder of the damages, if any, "shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased." *Id.*

In *S.M.V. v. Littlepage,* 443 N.E.2d 103, 107 (Ind.Ct.App.1982), the court held that the phrase "to be distributed in the same manner as the personal property of the decedent" made "[m]anifest reference" to the laws of intestate succession. The court therefore looked to the then-existing statutes on intestate succession regarding illegitimate children to determine whether an illegitimate child could recover under the wrongful death statutes. Following *Littlepage,* the parties here appear to agree that we must look to the current intestacy statutes to determine whether

M.P. may be considered a dependent child who may recover under the wrongful death statutes.

With regard to a child who was not yet born at the time of the putative father's death, the current version of the relevant intestacy statute provides that for the purposes of inheritance on the paternal side, such a child shall be treated as if the child's father were married to the child's mother at the time of the child's birth if:

> "(3) The paternity of a child born after the father died has been established by law in a cause of action that is filed within eleven (11) months after the father's death." Ind.Code § 29–1–2–7(b) (Burns Code Ed. Supp.2005).

This statute further provides that the testimony of the mother may be received into evidence to establish paternity, but that "[t]he evidence of the mother must be supported by corroborative evidence or circumstances." I.C. § 29–1–2–7(c). Here, since M.P. was unborn at the time of Meece's death, for her to inherit on the paternal side via the intestacy statutes, her paternity would have to have been established by law in a cause of action filed no later than September 22, 2004—eleven months from Meece's death on October 22, 2003.

The Defendants claim that M.P. cannot claim wrongful death benefits because she could not inherit by way of the intestacy statutes in that her paternity was not established by law in a paternity action filed before September 22, 2004. To be sure, Pearl did not file her petition to establish paternity and amend caption in the Decatur Circuit Court until October 21, 2004. At first glance, this would seem to support the Defendants' position that M.P. cannot claim wrongful death benefits. Indeed, in discussing the requirement in the intestacy statutes that paternity be "established by

law," the court in *Littlepage* looked to the paternity statutes. *See* 443 N.E.2d at 107.

Indiana's paternity statutes are found in Article 14 of Title 31 of the Indiana Code. Indiana Code § 31–14–2–1 (Burns Code Ed. Repl.2003) provides that a man's paternity may only be established "in an action under this article," or "by executing a paternity affidavit in accordance with IC 16–37–2–2.1." Further, Indiana Code § 31–14–5–5 (Burns Code Ed. Repl.2003) states that "[n]otwithstanding any other provision of this chapter, an action must be filed ... (1) during the lifetime of the alleged father ... or ... not later than five (5) months after his death." The Defendants claim that an action brought under the paternity statutes is the exclusive means of establishing paternity, and that since Pearl never brought an action under these statutes to establish Meece's paternity of M.P., the child cannot be considered a "dependent child" under the wrongful death statutes.[4] Pearl, on the other hand, claims that the minor's compromise petition filed in Decatur Circuit Court should be considered an action to establish Meece's paternity of M.P., and that even if it is not, her later-filed petition to establish paternity in the Decatur Court should "relate back" to the date of the original filing.

The question of what the intestacy statutes mean by "establish by law" was dis-

cussed by the Appellate Court in *Thacker v. Butler,* 134 Ind.App. 376, 184 N.E.2d 894 (1962), *trans. denied.* The relevant statute in effect at that time stated that an illegitimate child could inherit from the side of the alleged father only if "the paternity of such child has been established by law, during the father's lifetime" or if the father married the child's mother and acknowledged the child to be his own. 134 Ind.App. at 382, 184 N.E.2d at 897 (citing Burns' § 6–207 (Repl.1953)). The court stated in relevant part:

> "We believe it was the intent of the legislature by the use of the phrase, 'establish by law', in Item 1 of the above-quoted subsection (b) to mean that the paternity of such child must be first determined in a judicial proceeding brought for that purpose in a court of law having jurisdiction to determine such issue, during the lifetime of the putative father, in order for an illegitimate child to inherit from such father." 134 Ind.App. at 382–83, 184 N.E.2d at 897.

Our Supreme Court in *Burnett v. Camden,* 253 Ind. 354, 254 N.E.2d 199 (1970), *cert. denied,* 399 U.S. 901, 90 S.Ct. 2202, 26 L.Ed.2d 556, agreed with the *Thacker* court that:

> "[although] the statute contemplates a judicial proceeding, it would seem only

4. We would observe that there is some apparent conflict between the intestacy statutes and the paternity statutes. The paternity statutes state that a man's paternity may only be established in either an action brought under the paternity statutes or by a paternity affidavit. I.C. § 31–14–2–1. The paternity statutes also say that such an action must be filed either during the lifetime of the alleged father or no later than five months after his death. However, the relevant intestacy statute states that a child not yet born when the putative father dies has until eleven months after the father's death in which to establish paternity by law. If a cause of action under the pater-

nity statutes is the exclusive means of establishing paternity, and the paternity statutes require that a cause of action under the paternity statutes be filed within five months of the alleged father's death, then the special provision for children born after the alleged father's death in the intestacy statutes would seem to conflict with the paternity statutes' more stringent requirements. Regardless, here, both parties seem to agree that the eleven-month time limit is what is at issue; they simply disagree over whether Pearl's action in the Decatur Court should count as being a cause of action to establish the paternity of M.P. by law.

reasonable to hold that the nature of the action is not controlling as long as the finding of paternity is necessary for the result reached and the quantum of proof establishing such paternity meets the standard set forth in the inheritance statute, to-wit: that the mother's testimony be corroborated by other evidence or circumstances." 253 Ind. at 357, 254 N.E.2d at 201.

*Accord In re Estate of Edwards,* 562 N.E.2d 763, 765–66 (Ind.Ct.App.1990).

■ Of course, the inheritance statutes have been amended since the holdings in *Thacker* and *Burnett,*[5] but the requirement that paternity be "established by law" remains. See I.C. § 29–1–2–7(b). The question before us is whether the worker's compensation minor's compromise petition filed by Pearl in the Decatur Circuit Court, which was filed within eleven months after Meece's death, qualifies as an action to establish paternity by law under the intestacy statutes for purposes of the wrongful death statutes. For the reasons explained below, we hold that it does, and that M.P. was therefore a "dependent child" who is entitled to claim damages under the wrongful death statutes.

The position of the Defendants is relatively straight-forward and has some superficial appeal: if the wrongful death statutes define a "dependent child" to include an illegitimate child who would qualify for inheritance under the intestacy statutes, and the intestacy statutes require that paternity be established by law, in this case within eleven months after the alleged father's death, and the paternity statutes in turn state that paternity may be established only by means of an action under those statutes,[6] which they insist Pearl did not do, then M.P., regardless of whether she is in fact the daughter of Meece, simply cannot be considered a dependent child under the wrongful death statutes.

However, when referring to the requirement in the intestacy statutes that paternity "be established by law," our Supreme Court was not so strict in its interpretation of the statutes as the Defendants would have us be. The court in *Burnett* held that the nature of the action is not controlling. 253 Ind. at 357, 254 N.E.2d at 201. Therefore, we do not consider it fatal to M.P.'s case that she did not file an action captioned as a "paternity" action. All the intestacy statute requires, and therefore also all that is required under the wrongful death statute, is that (1) paternity be established in a judicial proceeding in which a finding of paternity is "necessary for the result reached," and that (2) the quantum of proof establishing paternity be the same set forth in the intestacy statutes, i.e. that the mother's testimony be corroborated. *Id.*

As to the first requirement, the minor's compromise action filed here was a judicial proceeding. The Defendants claim that a finding of paternity was not necessary for the result reached in that case and point out that the Decatur Circuit Court's order on the minor's compromise petition specifically required that Pearl return to court

---

5. The statute current at the time of these cases required that paternity be established by law within the alleged father's lifetime. *See* Burns' § 6–207 (Repl.1953). Depending upon the circumstances, the current statute requires that paternity be established either within the alleged father's lifetime, within five months of his death if the child was born but not yet twenty years old at the time of the father's death, or if the child was not born at the time of the father's death, within eleven months thereafter. *See* I.C. § 29–1–2–7(b).

6. Under the paternity statutes, paternity may also be established by affidavit, but this did not occur here with regard to M.P. See I.C. § 31–14–2–1.

after M.P.'s birth in order to prove paternity. To us, however, this proves that a finding of paternity was indeed required for the result reached—that M.P. receive a portion of the worker's compensation proceeds. M.P. would not have been entitled to such proceeds had paternity not been established. We therefore conclude that a finding of paternity was required for the result reached in that action.

As to the second requirement, the Defendants claim that the finding of paternity required for the worker's compensation statutes is not the same as a finding of paternity under the intestacy statutes. Although this presents a closer question, we conclude that the worker's compensation minor's compromise action filed in the Decatur Circuit Court did require the same quantum of proof as set forth in the intestacy statutes, i.e. that the mother's testimony be corroborated by other evidence or circumstances.

The worker's compensation statutes include in the definition of a presumptive dependent "acknowledged children born out of wedlock." I.C. § 22–3–3–19. The relevant intestacy statute provides that although a mother's testimony regarding paternity may be received into evidence to establish "paternity" and/or "acknowledgment," the mother's testimony "must be supported by corroborative evidence or circumstances." *See* I.C. § 29–1–2–7.

In support of their position that a paternity determination in a worker's compensation case is not the equivalent of a paternity finding under the intestacy statutes, the Defendants refer to *Goins v. Lott,* 435 N.E.2d 1002 (Ind.Ct.App.1982). In that case, the decedent was killed in an industrial accident and the mother of his legitimate child and the mother of his illegitimate child filed claims on behalf of their respective children for dependency benefits under the worker's compensation stat-

utes. The Industrial Board of Indiana, which then oversaw the administration of worker's compensation claims, awarded benefits to both children as presumptive beneficiaries. Goins, the mother of the legitimate child, appealed the Board's decision, claiming that the Board was without authority to award benefits to the illegitimate child without a judicial finding of paternity. Upon appeal, the main issue was whether the Board had the authority to make a finding of paternity. After analyzing the text of the relevant statutes, and referring to a Nebraska case addressing an almost identical issue, the court concluded that the Board had the authority to decide the issue of paternity for purposes of the worker's compensation claim. *Id.* at 1007.

The court further held that the provision of the worker's compensation statutes in question "only requires a factual determination of paternity and acknowledgment. It is evident these combined requirements are not the equivalent of the necessary elements in paternity actions, since paternity may be established through other mechanisms." *Id.* at 1008–09 (footnotes omitted). In a footnote, the court explained:

"In order to establish paternity in a proceeding brought specifically for that purpose, a mother need not show the putative father acknowledged the illegitimate child. *[The] argument that the Workmen's Compensation statute under construction here is analogous to the Act delineating an illegitimate's right under the descent and distribution statutes is unpersuasive.* Under Ind.Code 29–1–2–7(b) an illegitimate may share in the estate 'if but only if (1) the paternity of such child has been established by law, during the father's lifetime; or, (2) if the putative father marries the mother of the child and acknowledges the child to be his own....' The Workmen's Com-

pensation Act does not contain a similar provision. Had the legislature meant to exclude all acknowledged illegitimate children except those who had their paternity judicially established it could have easily indicated such an intention in a similar fashion. Further, the version of the Act under consideration here makes no reference to the descent and distribution statutes." *Id.* at 1009 n. 6 (emphasis supplied).

The Defendants claim that this supports their position that the quantum of proof in a worker's compensation finding of paternity is different from a paternity finding in the intestacy and paternity statutes. However, we emphasize that at issue in *Goins* was whether the mother of the illegitimate child had to establish paternity in a separate, judicial paternity action. The *Goins* court held that she did not. Further, we read *Goins* to mean that there are more ways of proving paternity in a judicial paternity action than that which is required for an illegitimate child to be considered a presumptive defendant under the worker's compensation statutes. For a child to be a presumptive dependent under the worker's compensation statutes, both the fact of paternity and acknowledgement must be established. *See Goins,* 435 N.E.2d at 1008. Whereas the intestacy statutes, although requiring that the mother's testimony be corroborated by other evidence or circumstances, do not require evidence of acknowledgment. *See* I.C. § 29-1-2-7.

██ We are unable to find any specific definition of precisely what is required to prove the fact of paternity in a worker's compensation case. However, in reviewing the sufficiency of the evidence in that case, the court in *Goins* referred to cases involving the paternity statutes. *See* 435 N.E.2d at 1005 (citing *D.M. v. C.H.,* 177 Ind.App. 600, 380 N.E.2d 1269 (1978); *Roe v. Doe,* 154 Ind.App. 203, 289 N.E.2d 528 (1972)). These cases stand for the proposition that, in a paternity action, the testimony of the mother regarding an act of sexual intercourse with the defendant, coupled with the probability of pregnancy, is sufficient to support a determination that the defendant is the father of the child. An act of intercourse plus the mere possibility of conception, however, cannot serve to support such determination. *Beaman v. Hedrick,* 146 Ind.App. 404, 411, 255 N.E.2d 828, 832 (1970). These cases demonstrate that in an action brought under the paternity statutes, the mere testimony of the mother that intercourse occurred is not sufficient; there must also be a probability of a resulting pregnancy.[7]

To us, this indicates that the standard of proof for the factual determination of paternity in a worker's compensation claim is effectively the same as that used under the paternity statutes. The standard of proof under the paternity statutes requires some corroboration of the mother's testimony, i.e. circumstances suggesting a probability of paternity. We therefore conclude that

---

**7.** *Compare D.M.,* 177 Ind.App. at 602, 380 N.E.2d at 1270 (evidence that child was born on September 1, 1969 and that the mother had regular sexual intercourse with the putative father in October, November and December of 1968 and January and February of 1969 held sufficient to support a determination of paternity) *and Roe,* 154 Ind.App. at 213, 289 N.E.2d at 535 (mother's testimony that child was conceived in June of 1961 by putative father meant a period of gestation of at least eight months and perhaps as long as

nine months which was safely within the range of normal gestation and sufficient to support a determination of paternity) *with Beaman,* 146 Ind.App. at 411, 255 N.E.2d at 832 (where the period from the date of alleged intercourse to the date of birth was less than seven months and the child weighed seven pounds and was nineteen and one-half inches long at birth, and physician testified that, given such circumstances, only a possibility of paternity existed, evidence was insufficient to support determination of paternity).

the standard of proof required for the factual determination of paternity in a worker's compensation action requires that the mother's testimony be corroborated in some way. This standard therefore meets the requirements of a "paternity" action contemplated by the intestacy statutes as set forth in *Burnett*. This is especially so in the present case, where, Pearl did eventually establish Meece's paternity of M.P. in the worker's compensation action. She did not rely merely upon her testimony, but instead produced DNA evidence supporting her claim. Therefore, Pearl's filing of the minor's compromise petition in the Decatur Circuit Court met both of the *Burnett* requirements: a finding of paternity was necessary for the result reached, and the quantum of proof met that set forth in the intestacy statutes, i.e. that the mother's testimony be corroborated.[8]

Regardless of its caption, the minor's compromise action filed in the Decatur Circuit Court was for our purposes a "paternity" action which was filed within the applicable time limits of the intestacy statutes, i.e. within eleven months after Meece's death. As such, M.P. may properly be considered as a dependent child in the wrongful death action, and the trial court correctly denied the Defendants' motion for partial summary judgment.

The judgment of the trial court is affirmed.

KIRSCH, C.J., and DARDEN, J., concur.

8. The Defendants claim that a significant difference between a true "paternity action" and the minor's compromise petition filed here is that the decedent father's estate will not necessarily receive notice of the minor's compromise action, whereas the estate would receive notice of a formal paternity action. This is not a concern in the present case, however, because Pearl, who initiated the minor's compromise action on behalf of her children, is also the personal representative of Meece's estate.